# Virginia Woodring Moore *v.* Commonwealth of Pennsylvania.

74

Argued November 18, 1970, before President Judge BOWMAN, and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MANDERINO, MENCER and BARBIERI.

*James W. Evans,* with him, *Goldberg, Evans & Katzman,* for appellant.

*Vincent J. Dopko,* Deputy Attorney General, with him *John P. Fernsler,* Deputy Attorney General and *Fred Speaker,* Attorney General, for appellee.

OPINION BY JUDGE BARBIERI, filed December 31, 1970:

Virginia Woodring Moore appeals from the adjudication by a majority of the State Civil Service Commission sustaining the action of the Commissioner of Professional and Occupational Affairs in ordering her

removal from her position as Secretary of the State Board of Nurse Examiners. Her threefold contentions before us are (1) that the Commissioner was without authority to order her removal because he is not the appointing authority for the post of Secretary, State Board of Nurse Examiners; (2) that, even if he were, there are no findings of fact supported by substantial and credible evidence to support the order of the Civil Service Commission; and (3) that the dismissal order is defective because it is based upon discrimination or non-merit reasons. As will appear, it will be unnecessary for us to consider appellant's second and third contentions.

It is basic in the law of this Commonwealth, stemming from Article VI, Section 7 (formerly Section 4), of the Pennsylvania Constitution, that the employe's superior having the power to appoint to the position has the power of removal. See *Suerman v. Hadley*, 327 Pa. 190, 199, 193 A. 645, (1937). "Appointing authority" is defined in Section 3 of the Civil Service Act of 1941, as amended, subsection (e),[1] as ". . . the officers, *board*, commission, person or group of persons having power by law to make appointments in the classified service". (Emphasis added.) That Act also provides in subsection (a) of Section 807, (71 P.S. 741.807) that: "no person in the classified service shall be removed except for *just cause* . . . [W]ritten notice of removal setting forth the reasons for such action and effective date thereof must be furnished. They shall have ten days from the receipt of such notice to give the *appointing authority* such written answer as the person removed may desire . . ."; and in subsection (b) that "Charges against any employee in the classified service asking for his removal for a violation of law or for any cause enumerated in the rules may be filed by any

---

[1] Act of August 27, 1963, §1, P. L. 1257, 71 P.S. 741.3.

citizen or taxpayer with the *appropriate appointing authority* and with the director". (Emphasis added.)

Section 951.5 of the Civil Service Commission rules provides: "Procedure under Section 951(a) Civil Service Act. The *appointing authority* will go forward to establish the charge or charges on which the personnel action was based.[2] (Emphasis added.)

It follows from all of the above that unless the removal action and the proceedings before the Civil Service Commission were carried out by appellant's "appointing authority", the adjudication appealed from cannot be sustained.

Appellant was "elected" by the State Board of Nurse Examiners to serve as Secretary to the Board from a group of five applicants by a vote on September 26, 1957. Approval of the Governor was required so that her appointment was not effective until January 2, 1958. The Board, then part of the Department of Public Instruction, also voted to fix her salary with the approval of the Superintendent of Public Instruction. This was in accordance with Section 418 of the Administrative Code,[3] which reads: "The State Board of Nurse Examiners shall consist of the Superintendent of Public Instruction and five members who shall be registered nurses . . . Three members of the Board shall constitute a quorum, and the Board shall select, from among its members, a chairman and shall elect a secretary who need not be a member of the Board . . . [T]he secretary shall receive such reasonable compensation as shall be determined by the Board, with the approval of the Superintendent of Public Instruction".

By amendment to the Administrative Code in 1963, the State Board of Nurse Examiners was transferred

---

[2] This provision obviously puts the burden upon the appointing authority to prove that there was "just cause" for a dismissal.

[3] Act of April 9, 1929, P. L. 177, 71 P.S. 128.

from the Department of Public Instruction and, with many other examining boards, became a part of the Department of State under a new administrative system headed by a "Commissioner of Professional and Occupational Affairs."[4] Under the terms of subsection (b) of Section 810, added by the amending Act of 1963, the Commissioner takes the place of the Superintendent of Public Instruction as an *ex officio* member of each board, including the State Board of Nurse Examiners. Also in Section 810, the powers of the Commissioner are spelled out. Some of the pertinent subsections concerning his powers read: "(4) To assist any professional and occupational examining board within the department, *if, as and when requested by the board;* . . . (8) To be responsible for all *administrative affairs* of each of the professional and occupational examining boards and to coordinate their activities; (9) To perform all the powers and duties relating to professional and occupational examining boards that heretofore were imposed upon the Superintendent or the Department of Public Instruction."[5] (Emphasis added.)

Under Section 812 of the Code, also added by the 1963 amending Act, each examining board retains the powers it had prior to 1963. The pertinent part of this new section reads: "The professional and occupational examining boards within the Department of State, shall, respectively, exercise the rights and powers and perform the duties by law vested in and imposed upon them . . .". 71 P.S. 279.3.

It is evident from analysis of the Code before and after the amendments of 1963 that the Commissioner of

---

[4] "The functions of the Superintendent of Public Instruction under Section[s] . . . 418 . . . are transferred to, and shall be exercised by the Commissioner of Professional and Occupational Affairs . . .". Section 202, as amended by Section 1 of the Act of June 3, 1963, P. L. 63, 71 P.S. 62.

[5] *Id.*, 71 P.S. 279.1.

Professional and Occupational Affairs is now in the shoes of the Superintendent of the Department of Public Instruction. If the Superintendent was appellant's appointing authority, the Commissioner now is, and as such would have the power to remove the appellant for just cause. If, however, the powers of the Superintendent and Commissioner are limited to administration over, but without power to appoint, the Secretary to the State Board of Nurse Examiners, the effort to remove the appellant in this case is without legal justification.

Counsel for appellant, recognizing the changes effected by the 1963 amendments, points to the unchanged provision in Section 418 that "the Board . . . shall elect a secretary", and argues that while the amendments give the Commissioner authority over the administrative affairs of the Board, it grants no appointing power to him so that the Board was and still is the appointing authority.

Counsel for the Civil Service Commission does not question the fact that the Board's electing power remains unaffected by the amendment, but contends that Section 214 of the Code puts the appointing power in the head of the administrative department in which the Board functions, which was the Superintendent of Instruction before the 1963 amendments and now is the Commissioner of Professional and Occupational Affairs. Section 214 reads: "Except as otherwise provided in this section and in the Civil Service Act, the *heads of the several administrative departments* . . . and the independent administrative boards and commissions, shall *appoint* and fix the compensation of such directors . . . *secretaries* . . . clerks, stenographers, . . .". 71 P.S. 74. (Emphasis added.)

Appellant argues that the term "secretaries" in Section 214 does not include her post which is in the

"classified service" under the Civil Service Act,[6] because, she asserts, the exception in Section 214 "specifically excludes appointments made under the Civil Service Act."[7]

In our view, we need not decide whether Section 214 applies to civil service employes, since we see the question of appointing power in this case as one which is entirely within the Administrative Code. We conclude that the apparent conflict in what appear to be two different appointing powers in Sections 214 and 418 of the Code is readily resolved by reference to what we believe to be the statutory intent.

First of all, the language in Section 214 is general, whereas the language in Section 418 is specific, clear and unambiguous in describing precisely how this particular appellant's position must be filled: "The State Board of Nurse Examiners . . . *shall elect* a secretary . . .". Secondly, the legislature has actually dealt with the role of the Board's departmental administrator in Section 418, limiting his participation in the Board's control over its secretary to approval of "such reasonable compensation as shall be determined by the Board . . .". 71 P.S. 128.

It is our conclusion, therefore, that the Board has the absolute power to appoint by elective selection its own secretary or executive manager free from review or veto by the Commissioner. Our view is bolstered by the language in Section 503 of the Code, which reads: "Except as otherwise provided in this Act, departmental administrative bodies, *boards,* and Commissions, within

[6] 71 P.S. 741.3(d) (12).

[7] We recognize, without considering in this opinion, that the word "secretaries" in Section 214 may have reference to a class of lower echelon, stenographer-type secretarial employes which would not include the type of executive caliber of secretary envisioned in Section 418 of the Code as the fulltime manager of a parttime, professional examining board.

the several administrative departments, *shall exercise their powers and perform their duties independently of the heads of or any other officers of the respective administrative departments with which they are connected,* but, in all matters involving the expenditure of money, all such departmental administrative boards and commissions shall be subject and responsible to the departments with which they are respectively connected." 71 P.S. 183. (Emphasis added.)

If this court should affirm the removal of appellant from her post, who could fill or appoint to that vacancy? If the Commissioner is the appointing authority, he should be able to make the appointment. Since he cannot, he is not appellant's appointing authority. Consequently, he cannot by virtue of his office remove her. Accordingly, the adjudication of the State Civil Service Commission will be reversed.

We are aware that under our ruling the Commissioner who must administer the Board's affairs is deprived of a basic disciplinary power which often is attached to and is part of the power to administer. This is not unusual, however, since in the government services many situations exist where appointments by one authority (such as the Governor) are made to posts which must function under administrators who are without power to remove the appointees. The Board of Nurse Examiners in this case is an example.

We are comfortable with our conclusion because the legislative intent that we read, including the provisions noted above from Section 503 of the Code, is that the professional licensing boards should function independently and, to this end, at least have the power to choose their executive secretary. We see what happened in this case as a possible example of what can happen when a Board secretary views her first allegiance and loyalty to be to the Board which appointed and hired her, rather than to one who exercises over-all adminis-

tration of a department in which her board is one of many. Her loyalty and competence are dramatically recognized and attested to by her Board. Except for the Commissioner, an ex officio member, the Board was unanimous in supporting her in their dismayed protest to the Governor over the Commissioner's action in ordering her dismissal.

It is obvious, and we believe the legislative intention, that the executive manager of a sensitive licensing board should be appointed and serve at the pleasure of a board whose members are from far flung areas of the Commonwealth and who meet infrequently at the seat of government. An executive secretary such as the one in this case must be responsible to the board that she serves. This does not comport with the idea that someone else should decide such questions as her administrative and executive competence.

If it is suggested that the Commissioner ought to have a remedy where he has just cause for removal of an employe attached in some way to his administrative area, the answer may be found in the provisions of Subsection (b) of Section 807 of the Civil Service Act, (77 P.S. 741.807), which provides that "Charges against any employe in the classified service asking for his removal for a violation of law or for any cause enumerated in the rules may be filed by any citizen or taxpayer with the appropriate appointing authority and with the director".

## ORDER

And Now, this 31st day of December, 1970, the order of the State Civil Service Commission dismissing the appeal of Virginia Woodring Moore and sustaining the action of the Commissioner of Professional and Occupational Affairs in ordering her removal from her position as Secretary, State Board of Nurse Examiners,

is reversed; and it is ordered that she be reinstated in her position without loss of pay.

---

CONCURRING OPINION BY JUDGE CRUMLISH, JR., filed December 31, 1970:

I must agree with the opinion of the Court that the order for the removal of Virginia Woodring Moore by the Commissioner of Professional and Occupational Affairs was without authority because the Commissioner was not the appointing authority for the position of Secretary, State Board of Nurse Examiners. However, in reaching this conclusion it was noted that the Secretary functioned as the fulltime executive manager of the Licensing Board exercising both executive and administrative authority over the daily operations of the Board. I cannot agree that this is her proper function.

It is apparent that the crux of the dispute between the Commissioner and the Board relates to the authority to control the daily administration of the Board. The Secretary has indeed heretofore been the executive manager of the Board of Nurse Examiners and has exercised, as such, control over the administration of that office. Since it is the Board to whom she is answerable, she has considered the Board to be her supervisor on both professional and administrative matters. While the sole question before us for adjudication is the propriety of the dismissal, I feel it necessary to comment on the underlying problem relating to the scope of responsibility of the Secretary.

Section 810 of the Administrative Code, 71 P.S. §279.1, sets forth the duties of the Commissioner as follows: "(1) to establish reciprocity with other states as regards professional and occupational licenses issued by the department, unless otherwise provided by law; (2) to keep the records of all of the professional and occupational examining boards in the City of

Harrisburg, Dauphin County, Pennsylvania; (3) to issue all certificates and other official documents of the various professional and occupational examining boards in the department. The officers and members, or any of them, of any such examining board may sign such certificates and other documents if the board shall have taken action authorizing such signatures; (4) to assist any professional and occupational examining board within the department, if, as and when requested by the board; (5) to cooperate with the several professions and occupations whose examining bodies are within the department in the determination and establishment of standards of professional education; (6) Whenever under any act of Assembly the right to practice any profession or work at any trade or occupation is conditioned upon examination, licensure or registration by or within the department, unless otherwise provided by law, to hold the examination, make such investigations, require such information and do and perform all other acts which may be necessary to determine whether applicants for licensure or registration are qualified to practice the profession or work at the trade or occupation within this Commonwealth, and in proper cases to issue licenses and certificates of registration: Provided, however, that the power and duty of the Department of Public Instruction to determine, value, standardize and regulate the preliminary education, both secondary and collegiate, of those to be hereinafter licensed or registered to practice any profession or work at any trade or occupation in this Commonwealth shall remain as heretofore and any action so taken shall be made known to the Commissioner of Professional and Occupation Affairs; (7) Unless otherwise provided by law, to fix the fees to be charged by the several professional and occupational examining boards within the department; (8) to be responsible for *all administrative affairs* of each of the professional

and occupational examining boards and to coordinate their activities; (9) to perform all the powers and duties relating to professional and occupational examining boards that heretofore were imposed upon the Superintendent or the Department of Public Instruction". (Emphasis added.) Moreover, the Code does not establish the duties of the Secretary, it simply creates the position and names the appointing power in section 418.

It is clear that the Commissioner is responsible for the administration of the Board of Nurse Examiners. Where these powers and duties are provided for by the Act, the Board cannot usurp them. Neither, therefore, can the Board assign them to its designee, the Secretary.

The Board has assumed its own administration and provided for administrative supervision through its Secretary. While these functions rest with the Commissioner, his failure to prohibit the Secretary from exercising these powers does not provide him with the right to dismiss her when her performance does not satisfy him. Instead, he should have relieved her of these duties and assumed them himself under section 810. As I have said, section 214 empowers him to appoint all administrative personnel.

The legislative record of the Act of June 3, 1963, P. L. 63, 71 P.S. 279.1, which established the Commissioner, leaves no doubt that it was the legislative intent that he as a "Commissioner" who would have complete control over the administration and purse strings of the State Boards. See Legislative Journal—House, pages 285-295 (March 12, 1963) ; Legislative Journal—Senate, pages 459-462 (May 14, 1963).

This Court has grappled with the difficult question of whether the Commissioner should have the power to dismiss the Secretary. It has observed that the Administrative Code does not specifically answer this point. I am of the opinion that this omission stems

not from lack of foresight by the Legislature but instead from the fact that the functions of the Secretary have been expanded by the Board beyond the purpose of the Act which intended the installation of an Administrative Coordinator. If the Commissioner would assert his proper authority over the administration of the Board, instead of attacking the *performance* of those already performing *his* duties, the power struggle evidenced by this action could give way to proper administration under the Code.