Commonwealth of Pennsylvania, Department of Transportation, Appellant, *v.* State Civil Service Commission of the Commonwealth of Pennsylvania, Appellee, and Michael A. Collura, William A. Hillman, Joseph V. Lombardo, Vaughn H. Hill, Ralph H. Bosley, John J. Thomaskevich, Anthony J. Nataro, James T. Richmond, Kenneth D. Spaw, D. K. Phillips, Harold T. Cunningham, Thomas C. Brown, Tim Elrick, Harry F. Stiles, Jack V. Smith, Donald Law, Sr., Harold R. Pringle, Ray J. Kurtz and Donovan L. Powell, Intervening Party-Appellees.

Argued May 8, 1973, before President Judge Bow-
MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON,
JR., MENCER, ROGERS and BLATT.

*Reynold J. Kosek,* Assistant Attorney General, with him *Robert W. Cunliffe,* Deputy Attorney General, and *Israel Packel,* Attorney General, for appellant.

No appearance for appellee.

*Robert Lazorchick, Robert M. Rowlands* and *Robert L. Webster,* with them *Scott & Lazorchick, Markowitz & Kirschner, Richard Kirschner* and *Webster & Hallal,* for intervening appellees.

OPINION BY JUDGE ROGERS, September 12, 1973:

In the avowed interest of economy, the Secretary of the Department of Transportation as of May 17, 1972 furloughed 73 Civil Service employees in the highway construction and maintenance division. The job classifications chosen for reduction were those of Construction Inspector I and Construction Inspector Trainee, apparently the Department's least skilled Civil Service workers.

The Department of Transportation has, for highway purposes, divided the State into eleven geographical administrative districts numbered 1 through 12, omitting number 7. The furloughs here questioned were made by administrative districts and each of the persons furloughed received a notice, the first sentence of which reads: "Due to a reduced construction work load in your district and the necessity for correspondingly reduced personnel costs, it has become necessary to furlough construction staff." Thirty-five of the persons furloughed appealed the Secretary's action to the State

Civil Service Commission which, after hearings, sustained their appeal and ordered their reinstatement with back pay. The Commonwealth by its Department of Transportation has appealed.

Section 3(t) of the Civil Service Act, Act of August 5, 1941, P. L. 752 as amended, 71 P.S. §741.3(t), defines furlough as "the termination of employment because of lack of funds or of work." Section 950 of the Act, added by the Act of August 27, 1963, P. L. 1257, §27, 71 P.S. §741.950, provides for written notice of any personnel action, and §951, 71 P.S. §741.951, provides for appeals and hearings, such as were conducted here. A rule of the Civil Service Commission appropriately provides that the appointing authority, in the case of an appeal, is required to go forward with the establishment of a prima facie case for the questioned personnel action. 4 Pa. Code Section 105.15(a). Pursuant to these provisions of statute and rule, the Department sought to justify the furloughs in the instant case by proofs which it asserts should have convinced the Commission that there was indeed a lack of funds and work justifying its action. It rested its case upon two factual bases: the first, a cut in the State's highways capital budget for the fiscal year 1971-1972, initially established at about $541,000,000, effected by the action of the Governor in January 1972 in withholding his approval of projects estimated to cost about $100,000,000 and the second, an asserted overstaffing in certain of the districts in which furloughs were ordered.

The difficulty with the Department's case is that its own evidence proved the furloughs actually ordered bore no relationship to the budgetary reductions or to existing overstaffing. Neither at the hearings nor in its brief here did the Department attempt to relate either the budget cuts or the asserted overstaffing to the

furloughs by the districts in which they were made. Indeed the record reproduced for our review obviously is simply the files of the Legal Bureau of the Department, including copies of appeal notices of hearings, return receipt cards, pamphlet laws and documentary exhibits endlessly duplicated. With great difficulty we have prepared from this welter of material the following table, which we believe is accurate:

| DISTRICT | 1970-1971 Percentage of personnel cost to payments to contractors[1] | Amount of construction projects withheld from approval | Number of Civil Service employes furloughed |
|---|---|---|---|
| 1 | 6.97 | 14,286,000 | 7 |
| 2 | 7.58 | 3,615,000 | 8 |
| 3 | 6.02 | None | 2 |
| 4 | 11.27 | None | 8 |
| 5 | 7.81 | None | 12 |
| 6 | 4.92 | 42,837,000[2] | None |
| 8 | 5.16 | 35,250,000[3] | None |
| 9 | 9.87 | None | 8 |
| 10 | 6.92 | None | 12 |
| 11 | 5.01 | None | None |
| 12 | 6.45 | 4,740,000[4] | 16 |
| | | 100,728,000[4] | 73[5] |

[1] Tabulations of personnel costs for fiscal years 1969-1970 and 1971-1972 are also in the record. They are not materially different from that of 1970-1971, and that for 1971-1972 was not prepared until August 1972.

[2] District 6 is composed of Bucks, Chester, Delaware, Montgomery and Philadelphia Counties.

[3] District 8 is composed of Dauphin and eight neighboring Counties. Most of the reductions were of projects in Lebanon County.

[4] Of these amounts $3,240,000 is the correction of a mathematical error, not a reduction of construction costs.

[5] There is testimony that 72 rather than 73 furloughs were ordered. 73 seems the correct number.

This table demonstrates first, that 80 percent of the $100,000,000 in budget cuts were made in projects for districts in which no furloughs were made, and second, that the number of Civil Service employees furloughed in the several districts bore little or no relationship to the alleged overstaffing in those districts. As to the latter consideration, the Department adduced evidence that the Federal government requires special justification for its participation in certain projects if the Department's personnel costs are in excess of six percent of payments to contractors. Without laboring the point, the table reveals that in district 12 where that percentage was 6.45, 16 persons were laid off, whereas in districts 4 and 9 where the percentages were 11.27 and 9.87, only 8 were furloughed.

Section 802 of the Civil Service Act, 71 P.S. §741. 802, provides, in part, as follows: "In case a reduction in force is necessary in the classified service, *no employe shall be furloughed while any probationary* or provisional *employe is employed in the same class in the same department or agency,* and no probationary employe shall be furloughed while a provisional employe is employed in the same class in the same department or agency. *An employe shall be furloughed only if at the time he is furloughed, he is within the lowest quarter among all employes of the employer in the same class on the basis of their last regular service ratings, and within this quarter he shall be furloughed in the order of seniority*: Provided, That the appointing authority may limit the application of this provision in any particular instance to employes in the same class in the same department or agency with headquarters at a particular municipality, county or administrative district of the Commonwealth." (Emphasis supplied.)

The Commission concluded not only that the Department had failed to justify the furloughs on the basis

either of lack of funds or of lack of work, it also found that the particular selections of persons to be furloughed was in some cases made in violation of the quoted portions of Section 802. We agree.

After determining that furloughs would be made, but immediately before choosing those persons to be furloughed, a number of long-term probationary construction inspectors were made regular by the Secretary. When, almost immediately following, the furlough action came, some of these recent probationers whose performance ratings as probationers were higher than those of some regulars, were retained while regulars with considerable seniority were furloughed. The Department thought this procedure was more equitable than that provided by the statute. This judgment was not for it to make. The Commission rightly concluded that the Department unlawfully evaded the requirements of the Act.

Further, in some of the districts the entire third and fourth quartiles of employees, by service ratings, were laid off. As the Commission pointed out, the proper procedure is first to determine the number of employees to be furloughed. If this number exceeds the number in the entire lowest quarter, the persons to be furloughed in addition to those in the fourth quarter are to be ascertained by a redivision of the remaining employes into new quarters by a new computation, and if the number still to be furloughed are less than the newly created fourth quarter, those to go should be determined on the basis of seniority.

The only point of law advanced by the Department in support of its case is the familiar axiom according the actions of public officials a presumption of regularity. This presumption was overcome in the Department's own case when the mass of undigested materials thrust at the Commission was assimilated by it and subjected to analysis.

We have reviewed this record with care. The evidence in support of the Commission's findings and conclusions was not merely substantial, it was overwhelming.

As the Department failed to justify its actions in the first instance, the Commission properly included in its order of reinstatement two appellants who, for reasons not explained, failed to appear at a hearing conducted on their appeals as well as those of others.

ORDER

AND Now, to wit, this 12th day of September, 1973, the order of the State Civil Service Commission is affirmed.

CONCURRING AND DISSENTING OPINION BY JUDGE BLATT:

As I read the majority opinion, it recognizes two basic errors on the part of the Department of Transportation (Department) in furloughing the employees here involved, and I must agree that these errors were committed.

The first error recognized is that, because the Department decided to furlough on a district rather than on a statewide basis, it should have conditioned the number of employees to be furloughed in each district on the basis of the fund cutback or lack of work in that particular district. The Department did not correlate the number of furloughs to the fund cutback in each district, nor was there sufficient evidence offered as to a lack of work in each district, aside from such as was necessarily mandated by the $100,000,000.00 cut in funds, and this cutback admittedly did not apply to all districts.

The second error noted is that the Department furloughed employees from both the third and fourth quar-

tiles in some districts without first redividing the employees in the first three quartiles into new quartiles. That also was improper procedure, and this Court must recognize it as such.

My problem, however, is with the broad-brush treatment given to these appeals by the Civil Service Commission (Commission) and approved by the majority. Having found errors as above indicated on the part of the Department, the Commission then ordered the reinstatement of *all* furloughed employees who had appealed their furloughs. But very possibly (and in fact probably) the Department had furloughed employees from districts where there *had* been a cutback in funds. Also, despite the fact that some employees were improperly furloughed from the third quartile, others *were* properly furloughed from the fourth quartile. The mere fact that the wrong procedure was used in furloughing *some* or even *most* of the employees here involved does not mean that the wrong procedure was used as to *all* employees concerned. It is the failure of the Commission and of the majority here to consider this possibility to which I object.

It seems to me a gross miscarriage of justice to treat the Civil Service appeals of thirty-five employees as if each one stood in precisely the same legal position as each of the others and to order all such furloughed employees reinstated with back pay without even once considering the facts as to each individual employee's furlough. The injustice to other employees who may have to be subsequently furloughed when these are restored to duty, to the citizens of the Commonwealth who may well be paying double salaries for the months necessarily involved in the appeal process, and to other furloughed, and similarly affected, employees who took no appeals, is further compounded by the fact that reinstatement is even ordered for two employees who,

after filing appeals, failed in any way to prosecute them and never even appeared before the Commission.

My reading of civil service law indicates clearly that a Civil Service appeal is and must always be considered as a personal appeal by the individual employee concerned. His employment record is uniquely his own, and his rights to reinstatement, if any, may depend just as much on the details of that employment record as they may depend upon any action taken by the employer. While it is true that an employer may be, and as the Department was in this case, required to follow a basic procedure in furloughing or dismissing Civil Service employees, and while it must be the employer's (here the Department's) burden to prove that the correct procedure was followed, it is equally true that the application of the procedure may have to vary from case to case, depending upon the actual facts relative to each of the individual employment records being considered.

To confirm the Civil Service Commission's adjudication here will be to order the reinstatement with back pay of at least some and perhaps many of the thirty-five employees appealing, whose individual records will indicate that they were always *in* the lowest quartile, in a district where there *was* a fund cutback, and, therefore, that they were properly furloughed. It will also mean ordering reinstatement with back pay for two employees who apparently thought so little of their chance for reinstatement that they did not even proceed with their appeals before the Commission; perhaps they, too, were also in the lowest quartile, and in districts where there was a cutback.

It would seem to me that we ought to remand this case to the Civil Service Commission with instructions that each appeal should be considered individually and that the Commission should ascertain, by further evi-

dence from the Department, if necessary, precisely which employees *were* improperly furloughed.

I believe that we should also rule as a matter of law that a group of furloughs coincidentally made at the same time may not be ruled invalid as a group merely because of errors made in the application of furlough procedures as to some of the individual employees appealing in the group.

In addition, we should also require the Commission to obtain evidence from the Department that there are now jobs of the proper classification presently available, in each district where reinstatement is ordered, to which furloughed employees can actually be returned. Otherwise, of course, no reinstatement would as yet be possible.

Judge WILKINSON joins in this opinion.