Commonwealth of Pennsylvania, Department of General Services, Petitioner *v.* Melvin Johnson, Respondent.

Argued March 9, 1979, before Judges WILKINSON, JR., MENCER and ROGERS, sitting as a panel of three.

*Theodore A. Adler,* Chief Counsel, with him *I. Lawrence Gelman,* Assistant Chief Counsel, and *Gerald Gornish,* Attorney General, for petitioner.

*Larry E. Stone,* with him *John M. Jones,* for respondent.

OPINION BY JUDGE MENCER, August 28, 1979:

Melvin Johnson, a civil service employee with a classification of Equal Opportunities Development Specialist V (EODS V), is employed as a Contract Compliance Officer in the Department of General Services (Department). On May 17, 1976, Richard Partee was employed by the Secretary of the Department of General Services in a non-civil-service position as

a Special Assistant and Director of Contract Compliance, whereupon he undertook supervision of the Contract Compliance Office and assumed duties formerly performed by Johnson. Efforts were made to persuade Johnson to resign. Thereafter, the Department acted in a manner which had the appearance of a concerted effort to pressure Johnson into resigning. He received no assignments from Partee for approximately eleven months. On July 16, 1976, the entire Contract Compliance Office was moved to another floor, but Johnson was left behind with only a desk and chair. In February 1977, Johnson received an unsatisfactory performance rating which was later withdrawn pending a reevaluation. In August 1977, Johnson was suspended as a result of his absence to attend a Civil Service Commission meeting. Johnson protested these various actions either by complaint or appeal to the Civil Service Commission (Commission).[1]

As a result of Johnson's complaint charging discrimination in work assignments filed with the Commission in May 1977, the Commission, after an investigation, determined that Johnson's duties as an EODS V had been improperly assigned to a non-civil-service employee and requested that his duties be restored. In August 1977, an Office of Administration audit concluded that Johnson did not have the planning and supervisory functions corresponding to his EODS V classification but rather had duties and responsibilies corresponding to an EODS II classification.

On October 18, 1977, the Commission held a hearing pursuant to Section 203 of the Civil Service Act,

---

[1] On August 3, 1976, Johnson filed a complaint with the Commission regarding the events which had taken place until that time. It was dismissed because the Commission determined that no personnel action had occurred. The unsatisfactory performance rating and the suspension were both appealed to the Commission.

Act of August 5, 1941, P.L. 752, *as amended*, 71 P.S. §741.203, to decide whether the Department's actions regarding Johnson's work assignments, performance evaluation, and suspension were proper under the Civil Service Act. The Commission concluded that the suspension was improper and that the Department's course of conduct toward Johnson was discriminatory and thus violated Section 905.1 of the Civil Service Act, 71 P.S. §741.905a. The Department was ordered, *inter alia*, to restore to Johnson the full duties which had been assigned to Partee. The Department's appeal to this Court followed. We affirm.

The narrow issue on appeal is whether the Commission had power to investigate and determine issues regarding the removal of duties once assigned to Johnson and to order reinstatement of said duties. The Department characterizes its action as mere managerial supervision and assignment of duties within a position classification which it argues is not a "personnel action" within the meaning of Section 905.1 of the Act. We disagree.

Section 905.1 provides:

> *No officer or employe* of the Commonwealth *shall discriminate against any person in* recruitment, examination, appointment, training, promotion, retention or *any other personnel action* with respect to the classified service because of political or religious opinions or affiliations because of labor union affiliations or *because of* race, national origin or *other non-merit factors*. (Emphasis added.)

The Commission regulation at 4 Pa. Code §105.2 lists types of personnel actions and includes the following: appointment, promotion, removal, suspension, demotion, furlough, retirement, resignation, transfer, reassignment, leave of absence, compensation changes, performance rating, and probationary period changes.

The regulation does not purport to provide an exclusive listing.

While Johnson retained his position officially and received his salary, he was essentially displaced from his position by being stripped of duties and responsibilities and by being deprived of the means of performing his work. When he was finally assigned duties by Partee, the duties lacked the level of responsibility assigned to his position classification. Such action by the Department caused a drastic change in Johnson's duties and responsibilities and was analogous to a demotion or reassignment[2] and, therefore, must constitute a personnel action within the meaning of Section 905.1 of the Civil Service Act.

In addition, as the Commission found, Johnson was in effect replaced by an unclassified employee who took over his position and its attendant duties,[3] and thereafter he was given *no* work assignments. Such "managerial" acts are substantially different

[2] Demotion is defined in Section 3 of the Civil Service Act, 71 P.S. §741.3, as a "change [in status] to a position in a class carrying a lower maximum salary." In comparison, a demotion under Section 1151 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §11-1151, can occur as a result of *either* a reduction in salary *or* an unfavorable change in position. *Norwin School District v. Chlodney*, 37 Pa. Commonwealth Ct. 284, 390 A.2d 328 (1978).

An assignment occurs when a classified employee is assigned from one position to another, *i.e.*, from one group of duties and responsibilities to another in the same class. *See* Section 705 of the Civil Service Act, 71 P.S. §741.705.

[3] We note that the Department's action in transferring a civil service employee's position which does not include policy-making decisions to an unclassified position which by definition includes policy-making responsibilities is a violation of the Civil Service Act. *Wilbar v. Berkowitz*, 424 Pa. 154, 225 A.2d 538 (1967). The facts as found by the Commission demonstrate that essentially the same action was taken in this case. The difference between the *Wilbar* case and this case is that the civil service employee in *Wilbar* was furloughed, clearly a "personnel action" as defined in the regulations.

from the usual managerial assignment of duties within a position classification and are undoubtedly reviewable by the Commission if, as here, they constitute a personnel action which contravenes Section 905.1. *See* Section 203(3) of the Civil Service Act, 71 P.S. §741.203(3).

Finally, the Department's argument that Johnson's appeal to the Commission was untimely is without merit. Not only did Johnson consistently file complaints and appeals from official and unofficial Department actions in a timely manner, but the Commission, on its own initiative, may investigate and require observance of the provisions of the Civil Service Act. Section 203(3) of the Civil Service Act.

Therefore, we enter the following

ORDER

AND Now, this 28th day of August, 1979, the order of the State Civil Service Commission in the above captioned case, dated May 22, 1978, is affirmed.