Irving Silverman, Petitioner *v.* Commonwealth of Pennsylvania, Department of Education, Respondent.

Commonwealth of Pennsylvania, Department of Education, Petitioner *v.* Irving Silverman, Respondent.

Argued February 5, 1982, before Judges BLATT, WILLIAMS, JR. and CRAIG, sitting as a panel of three.

*Edgar R. Casper, Krank, Gross & Casper,* for petitioner, Irving Silverman.

*Phillip A. Ayers,* Counsel, with him *Michael A. Davis,* Chief Counsel, for Pennsylvania Department of Education.

OPINION BY JUDGE WILLIAMS, JR., December 20, 1982:

Before us here are two separate appeals from a single adjudication of the State Civil Service Commission (Commission). The adjudication in question concerned adverse personnel action taken by the Department of Education (Department) with regard to Irving Silverman, a former bureau director in the Department. Although the Commission granted Silverman certain relief, it was not the relief he sought. The first of the instant appeals, No. 872 C.D. 1981, is a challenge by Silverman to the sufficiency of the relief the Commission granted him. The second appeal, No. 1073 C.D. 1981, is a cross-appeal by the Department, and focuses on but one element of the Commission's adjudication: a conclusion that the Department had discriminated against Silverman. We consolidated the two appeals for argument and disposition.

Prior to the events here in issue, Irving Silverman had been employed by the Department for over 20 years. In September 1978, he attained the position of "Director, Office of Administrative Management, Higher Education." As Director, Silverman was in pay range 51. During the spring of 1979 the Secretary

of Education, Dr. Robert G. Scanlon, began efforts to reorganize the administrative structure of the Department. As a prelude to the proposed reorganization, the Secretary had requested the State Civil Service Commission to put various existing director positions in "unclassified service," pursuant to Section 3(c)(1) of the Civil Service Act.[1] One of the positions targeted was Silverman's. By a decision dated June 8, 1979, the Commission gave partial approval of the Secretary's request. Silverman's position was among those approved for the "unclassified service" category. However, the Commission's decision in that respect expressly provided that *all incumbents in the affected positions would retain civil service status.*[2]

The proposed reorganization would result in the abolishment of Silverman's bureau and, consequently, his position as Director. The duties of his bureau, or office, consisted of budgetary, construction, and managerial support functions. However, there were at least two other bureaus within the Department that had the same group of functions. Under the reorganization plan, the multi-bureau performance of the same functions was to be eliminated or reduced; the duplicated functions were to be consolidated and transferred to a new or different bureau. The budgetary and managerial support functions of Silverman's bureau, along with the same functions of two other existing bureaus, were to be transferred to a newly created unit, the Bureau of Budget and Management. The new

---

[1] Act of August 5, 1941, P.L. 752, *as amended*, 71 P.S. §741.3 (c)(1). It can be stated, as a generality, that the term "unclassified service" refers to positions that are not accorded the statutory protections of civil service status. *See Wilbar v. Berkowitz*, 424 Pa. 154, 156, 225 A.2d 538, 539 (1967).

[2] The Commission's approval further explained that, should any of the affected positions become vacant through *normal personnel actions* within the merit system, the *newly appointed employees* would be in the "unclassified service" category.

bureau would be headed by a newly titled "Director, Bureau of Budget and Management," for whom Secretary Scanlon had initially proposed compensation at pay range 53.

The reorganization in the Department took effect on November 8, 1979. However, during the spring of 1979, Silverman had been advised of the impending abolishment of his position. He also had learned, during the spring or early summer of 1979, that his name was omitted from the officially circulated list of people proposed for bureau directorships under the reorganization plan.[3] By July 1, 1979, Silverman had been relieved of his staff and all practical duties; and, as of that date, he was the director of his bureau only in title and salary.

At some point about July 1, 1979, before the effective date of the reorganization, Irving Silverman was given a new job assignment within the Department. He was given the role of "special assistant" to Dr. Victor Petaccio, the Deputy Secretary for Administration and Management. However, according to Silverman, his tasks in his new capacity turned out to be low-level or routine; and were not commensurate with his former position or his education and experience. Nevertheless, for several months after both his transfer *and the reorganization,* Silverman was to continue receiving the same pay range 51 that he did in his previous position. Indeed, he continued to be paid under his pre-reorganization title of "Director, Office of Administrative Management, Higher Education."

In what was perhaps a felt need to give Silverman a better-defined employment status, Dr. Petaccio re-

---

[3] According to the Department's evidence in this case, Silverman was considered for the directorship of the new Bureau of Budget and Management, as well as for other positions that would be created by the reorganization. The Department added, however, that the positions went to other people who were deemed to be more qualified than Silverman.

quested the Department to grant Silverman the job classification of "Executive Assistant," at pay range 45. The precise date of Dr. Petaccio's request is not clear; but by a letter dated January 17, 1980, the Department denied the request. The Department also concluded that, given Silverman's duties with Dr. Petaccio's office, the appropriate job classification was "Administrative Officer III," *at pay range 42.* There followed, on January 29, 1980, a meeting of Silverman, Dr. Petaccio, and a personnel officer of the Department. The purpose of that meeting was to discuss Silverman's employment status. The result of the meeting was that the Department gave Silverman a choice: accept a voluntary demotion or be furloughed.

By a letter dated February 14, 1980, Irving Silverman advised the Department that he accepted a voluntary demotion from the position of *"Director, Administrative Management, Higher Education"* to the position of "Administrative Officer III." On March 5, 1980, the Department approved the voluntary demotion, which was to become effective on March 13, 1980. The demotion meant a salary decrease of over $11,000 a year.[4] On March 24, 1980, Silverman filed an appeal to the Commission.

According to the information form that Silverman lodged with the Commission on April 3, 1980, the purpose of his appeal was to contest the validity of his demotion from Director to "Administrative Officer III." The indicated bases for the appeal were Sections 951(a) and 951(b) of the Civil Service Act.[5] In that respect, Silverman pleaded the following

---

[4] As Director, Silverman's annual salary was $34,621; and as an "Administrative Officer III," his annual salary would be $23,511.

[5] Sections 951(a) and 951(b) of the Civil Service Act, 71 P.S. §§741.951(a), (b), were added by Section 27 of the Act of August 27, 1963, P.L. 1257.

grounds: (1) that the functions of his previous position were "within the merit system" and were still being performed; and (2), that he was unjustifiably transferred from his previous position into a lower position, and that such action was discriminatory.[6] As for relief, Silverman asked for reinstatement with back pay and any other remedy the Commission deemed appropriate.

The Commission heard Silverman's appeal on June 18, 1980; and entered its order on March 25, 1981. In its adjudication, the Commission found that Silverman's position as Director had been abolished on November 8, 1979, as a result of the reorganization that took effect on that date. The Commission also found, however, that Silverman had been reassigned from his duties as Director to duties as Dr. Petaccio's assistant; and that the reassignment had taken place on July 1, 1979, more than 4 months before the reorganization went into effect. The Commission further found that Silverman's duties under his new assignment were not appropriate for the job classification and pay level he had attained as Director. Regarding the last determination, the Commission added that, at the time of the reassignment, Silverman had been led to believe that his new duties would be commensurate with the job classification he then had.

The Commission decided that Silverman's directorship had been validly abolished. However, the Commission was of the view that the abolishment could not have been operative until November 8, 1979, the effective date of the reorganization. Based on that conclusion, the Commission held that the reassignment

---

[6] This allegation by Silverman is somewhat ambiguous; because it could refer either to the reassignment of July 1, 1979, or to the demotion that became effective on March 13, 1980. However, given the stated purpose of Silverman's appeal to the Commission, we assume that the allegation is directed to the latter personnel action.

of Silverman to the lower position on July 1, 1979, prior to the reorganization date, was an invalid de facto demotion: but was invalid only for the period from July 1, 1979 to November 8, 1979. The Commission further reasoned that, on the effective date of the reorganization, all work was thereby eliminated from Silverman's directorship; and that he thus became subject to being furloughed *as of that date.*

Notwithstanding its premise that Silverman could have been furloughed as of November 8, 1979, the Commission's ultimate decision was that the Department was guilty of a procedural impropriety that entitled Silverman to some relief. The procedural defect designated by the Commission was the Department's delay in exposing Silverman to a furlough. The Commission reasoned that the Department should have exposed him to being furloughed on November 8, 1979, instead of waiting until early 1980 to do so. According to the Commission, the delay was prejudicial to Silverman because it deprived him of the right to appeal the July 1, 1979 reassignment, and deprived him of the opportunity to assert his furlough rights with respect to positions that became vacant on reorganization. The Commission concluded that the delay was not only procedurally improper, but also constituted an act of discrimination for that very reason.

By way of relief, the Commission ordered the Department to amend its records to show that Silverman was demoted in lieu of furlough *as of November 8, 1979;* and to grant him furlough rights as of that date. From that order, there followed the appeals by Silverman and the Department.

## No. 872 C.D. 1981

In Silverman's appeal to this Court, he argues that the Commission should have ordered his reinstatement with back pay, or ordered that he be placed in a posi-

tion commensurate with his previous classification as Director. Silverman's first contention is that the Commission erred in finding that the Department had, in fact, abolished his former position pursuant to reorganization. According to Silverman, there was no evidence to support the Commission's finding on that point. Going even further, he asserts that the post-reorganization successor to his bureau was no more than his old bureau with a new name and new director. In our view, whether or not Silverman's former position was actually abolished was a question of fact for the Commission to determine. The Department presented testimonial evidence which recounted how the functions of Silverman's old bureau, along with similar functions of other former bureaus, were consolidated under the control of a new, post-reorganization bureau. That evidence was sufficient to show that Silverman's old bureau was no longer the repository of any of the duties and functions it once had. To us, such evidence was sufficient to prove that, in a very real and practical sense, Silverman's position was abolished by the reorganization. Of course, the weight and credibility of the Department's evidence was for the Commission to measure. *Philadelphia County Board of Assistance v. Cahan,* 24 Pa. Commonwealth Ct. 543, 358 A.2d 440 (1976).

Silverman next argues that, because of a certain conclusion the Commission made in his favor, he should have been granted the relief he seeks. The conclusion that Silverman relies on was: that his reassignment on July 1, 1979 was an improper "de facto demotion." In our view, that conclusion by the Commission cannot aid Silverman's case; because the conclusion itself is fallacious. It is difficult to see how it can be concluded that Silverman was demoted on July 1, 1979: because he retained his previous classification and continued to be paid his previous salary until

*March 13, 1980.* It was not until March 13, 1980, that he was actually demoted from the classification of Director, pay range 51. Although July 1, 1979 may have brought a change in Silverman's duties and his working title, there was no demotion so long as he retained his previous classification and salary. *Shaefer v. West Chester State College,* 54 Pa. Commonwealth Ct. 327, 421 A.2d 502 (1980).[7]

Moreover, even if the July 1, 1979 reassignment had been improper, we must note that Silverman made no attempt to appeal from the reassignment within the 20 days mandated by Section 951 of the Civil Service Act. Beyond that period a challenge to the reassignment was precluded. *See, e.g., Ellis v. Department of Transportation,* 33 Pa. Commonwealth Ct. 354, 381 A.2d 1325 (1978).

It must be remembered that Silverman accepted a voluntary demotion upon being confronted with the alternative of a furlough. Therefore, as we see it, the overriding issue in this case is whether the Department had a right to subject him to being furloughed and to thus bring about the choice he made. Although the Civil Service Commission approved the Secretary of Education's request to put certain directorships, including Silverman's, in "unclassified service," the grant of that request was expressly conditioned upon

---

[7] In concluding that Silverman had suffered a "de facto demotion" by the July 1, 1979 reassignment, the Commission relied on our opinion in *Department of General Services v. Johnson,* 45 Pa. Commonwealth Ct. 245, 405 A.2d 596 (1979). *Johnson* contains a statement to the effect that, even though an employee officially retains his position and salary, a diversion of his duties and responsibilities is "analogous to a demotion or reassignment." That proposition might appear to state a rule that is at odds with the *Shaefer* case. However, our actual holding in *Johnson* was merely that a drastic change of an employee's duties is a *reviewable* personnel action. In *Johnson* we upheld the Commission's power to rectify such action upon a finding of discrimination.

the preservation of the civil service status of the incumbents. Silverman was such an incumbent. Consequently, he could be furloughed only in accordance with the terms of the Civil Service Act.

Under the Civil Service Act, a furlough can be based only on a lack of work or a lack of funds. *Department of Public Welfare v. Magrath,* 14 Pa. Commonwealth Ct. 257, 321 A.2d 403 (1974). Where an appeal to the Commission calls into question the validity of a furlough, the appointing authority has the burden of going forward with proof to establish a prima facie case justifying the furlough. That burden is mandated by the terms of Section 105.15(a) of the Rules of the Civil Service Commission, 4 Pa. Code. §105.15(a). *D'Amato v. Department of General Services,* 58 Pa. Commonwealth Ct. 489, 427 A.2d 1287 (1981); *Department of Transportation v. State Civil Service Commission,* 10 Pa. Commonwealth Ct. 310, 309 A.2d 445 (1973). In light of the above principles, we must determine whether the appointing authority in the instant case met its burden: of making a prima facie showing that a lack of work or a lack of funds justified subjecting Irving Silverman to the prospect of a furlough.

With regard to Silverman, there was never a contention by the Department that a lack of funds justified a furlough. And, the only evidence adduced by the Department to show a lack of work for Silverman in his previous classification, as Director, was the fact that his former directorship had been abolished by the reorganization. The Commission reasoned that because Silverman's previous position had been abolished, the automatic consequence was a lack of work that justified his exposure to being furloughed. We conclude that the Commission's reasoning in this respect was erroneous.

The Commission's reasoning as to the lack of work might seem, at first glance, to be an application of our decision in *Department of Public Welfare v. Magrath.* But a closer reading of *Magrath* will reveal that it represents a situation that is converse to the one in the instant case. In *Magrath,* we upheld the elimination of a regular employee's position and his consequent furlough on the ground of lack of work. However, in *Magrath,* the elimination of the position *resulted from* the lack of work. In the instant case, the elimination of Silverman's position *brought about* the lack of work in the position. Under the Commission's reasoning, the mere elimination of a position would be enough to warrant the furloughing of a regular employee, regardless of whether or not there was an actual lack of work for people in the same class or status.

In sum, we conclude that the Commission applied an incorrect test in determining that there was a lack of work as to subject Irving Silverman to being furloughed. Therefore, we must vacate the Commission's adjudication and remand the case to the Commission for a new adjudication. In determining whether Silverman was properly subjected to being furloughed, the Commission should also consider the application of Section 802 of the Civil Service Act.[8]

*No. 1073 C.D. 1981*

As we observed at the outset of this opinion, the Department's cross-appeal is concerned only with the Commission's conclusion that the Department discriminated against Irving Silverman. The Department asks us to reverse that element of the adjudication, arguing that Silverman did not prove a case of discrimination. We agree that the record evidence does not support the Commission's finding of discrim-

---

[8] 71 P.S. §741.802.

ination. It is well settled that, where an employee alleges discrimination, he has the burden of proof in that respect. *E.g., Tempero v. Department of Environmental Resources,* 44 Pa. Commonwealth Ct. 235, 403 A.2d 226 (1979). He must prove that the contested personnel action was motivated by non-merit factors. *Snipas v. Department of Public Welfare,* 46 Pa. Commonwealth Ct. 196, 405 A.2d 1366 (1979).

Although Silverman did include a claim of discrimination in his appeal to the Commission, he presented no evidence whatsoever to show that the Department was improperly motivated in its personnel action or actions. The Commission, however, relying on its premise that the Department had followed certain improper procedures, reasoned that the Department was automatically guilty of discrimination under Section 905.1 of the Civil Service Act.[9] We must reject such a proposition. Even if we assume, *arguendo,* that the Department did commit a procedural error with regard to Silverman, such an error is not necessarily the equivalent of discrimination. Accordingly, we must reverse the Commission's ruling that the Department was guilty of discrimination.

## SUMMARY

Pursuant to our decision under appeal No. 872 C.D. 1981, we must remand this case to the Commission for new proceedings. However, the proceedings on remand shall be limited to the issue of whether there was an *actual* lack of work as to subject Irving Silverman to being furloughed. In conjunction with that issue, the Commission shall also consider the provisions of Section 802 of the Civil Service Act.

---

[9] Section 905.1, 71 P.S. §741.905a, was added by Section 25 of the Act of August 27, 1963, P.L. 1257.

456

### ORDER

AND Now, the 20th day of December, 1982, the adjudication and order of the State Civil Service Commission in the above matter are reversed and vacated; and the case is hereby remanded for proceedings consistent with the annexed opinion.

Judge MENCER did not participate in the decision in this case.