Alfred G. Boris, Petitioner *v.* Commonwealth of Pennsylvania, Department of Environmental Resources, Respondent.

548

Argued May 12, 1983, before Judges WILLIAMS, JR., CRAIG and DOYLE, sitting as a panel of three.

*M. Maley Peterson,* with him *Robert E. Faber,* for petitioner.

*Robert Lesko,* with him, *John E. Childe, Jr.,* Assistant Counsel, for respondent.

OPINION BY JUDGE WILLIAMS, JR., April 13, 1984:

Alfred G. Boris appeals from the adjudication of the Pennsylvania Civil Service Commission dismissing his appeal of his removal from the position of Environmental Protection Specialist with the Pennsylvania Department of Environmental Resources (Department).

Boris was provisionally appointed in 1969 as an Environmental Safety Representative in the Pennsylvania Department of Health. In June of 1970, his classification was changed to Environmental Specialist II (Sanitation). As a result of a departmental reorganization which occurred in January of 1970, Boris was transferred to the newly created Department of Environmental Resources. On December 19, 1971, he received regular Civil Service status as an Environmental Protection Specialist II (Sanitation). He was promoted to the position of Environmental Protection Specialist III (Sanitation) on March 23, 1972. Throughout the period from 1969 to September of 1975 Boris's duties were in a housing consultant program, and his performance was well above satisfactory.

In September of 1975, the housing consultant program was eliminated due to budgetary constraints, and Boris was offered the option of resigning or being laterally reassigned to the position of Vector Control Consultant. In this position, Boris had responsibility for providing consultation and monitoring local compliance with state grant requirements in the area of pest and insect control. His geographic area of responsibility was the 5-county Philadelphia metropolitan area.

Boris was discharged on June 13, 1978. In the letter of dismissal, dated May 26, 1978, the Department cited numerous factors as the basis for the personnel action. Those factors included: four fair or unsatisfactory performance evaluations during the period from September of 1975 to April of 1978; a written reprimand for actions occurring on August 8, 1977 for leaving what appeared to be a loaded revolver in the conference room of the office; the judgment of an independent review panel confirming the basis for an evaluation of unsatisfactory for Boris's performance during the period from September of 1976 to September of 1977; and specific examples of inadequate performance during the period from January of 1978 to April of 1978.

Boris appealed to the State Civil Service Commission, under Sections 951(a) and (b) of the Civil Service Act.[1] He asserted that his dismissal was not based on good cause,[2] and furthermore, that his termination was discriminatory on the basis of age.[3] After a lengthy hearing at which both Boris and the Department were represented by counsel, the Civil Service Commission unanimously concluded that Boris

---

[1] Act of August 5, 1941, P.L. 752, *as amended*, added by Section 27 of the Act of August 27, 1963, P.L. 1257, 71 P.S. §741.951(a) and (b).

[2] Section 807 of the Civil Service Act, 71 P.S. §741.807, reads: "No regular employe in the classified service shall be removed except for just cause."

[3] Section 905.1 of the Act, added by Section 25 of the Act of August 27, 1963, P.L. 1257, 71 P.S. §741.905a, provides in part:

No officer or employe of the Commonwealth shall discriminate against any person in recruitment, examination, appointment, training, promotion, retention or any other personnel action with respect to the classified service because of political or religious opinions or affiliations . . . or because of race, national origin or other non-merit factors.

was properly removed, and that his removal was not motivated by discrimination. The Commission specifically cited testimony of Boris's supervisors that they were frequently required to correct and amend the program evaluations that he submitted, that he failed to identify present and potential problems in the vector control plans which he monitored, and that they received several complaints from local administrators regarding Boris's inefficiency and lack of expertise. While acknowledging that the record reflected that Boris had considerable personal support among township and borough administrators with whom he came in contact, the Commission found this evidence of limited impact due to these administrators' lack of exposure to major segments of Boris's job responsibilities. The Commission also found no credible evidence to support Boris's claim that due to his age —59 at the time of removal—he was afforded fewer training opportunities than other similarly situated employees.

Boris raises several challenges to the Commission's adjudication. Most of his challenges are to the procedural fairness of the hearing before the Commission. Specifically, he asserts that:

1. his counsel was afforded insufficient opportunity to examine and cross-examine witnesses;

2. uncorroborated hearsay was admitted into the record and relied upon by the Commission in reaching its adjudication;

3. the Commission excluded evidence designed to refute statements contained in performance reports issued between 1975 and 1977; and

4. his counsel was forced to proceed with the hearing without access to documents which had been subpoenaed, but which were not produced by the Department.

None of these arguments convinces us that the hearing failed to satisfy minimum due process standards.

First with regard to his complaint that his counsel was afforded insufficient opportunity to examine and cross-examine witnesses, Boris contends that he was foreclosed on three occasions from presenting evidence significant to his case. The first incident involved cross-examination by Boris's counsel of the Department official who was responsible for reviewing Boris's performance evaluations. The Commission, per its chairperson, sustained an objection to a question regarding training opportunities afforded Boris on the ground that the question was beyond the scope of direct examination of the witness. After an offer of proof, the Commission ruled that the line of questioning related to Boris's claim of discrimination, and that the witness would be made available for examination when Boris presented his own case. Boris's counsel took no exception to the ruling. Rather, her response was "All right. On that basis, then, I have no further questions."

A second record reference which Boris cites as evidence of improper restraint on his ability to present evidence involved direct examination of a former county sanitation employee. Boris's counsel was attempting to question the witness regarding the number of rat control complaints he received and how often he consulted Boris on such complaints. The Commission sustained an objection on grounds of relevancy. Boris's counsel took no exception to the ruling. The third incident cited by Boris oc-

curred during cross-examination of his immediate supervisor. The Commission sustained an objection to questioning by Boris's counsel regarding a grant application which was submitted after Boris's removal, and with respect to which Boris had no input. Again, counsel failed to take exception.

We construe none of these rulings by the Commission as an unwarranted limitation on Boris's right to present his case. The rulings appear reasonable in light of the issues involved in the appeal. Nor are we impressed by Boris's contention that his right to a fair hearing was denied by virtue of occasional exhortations by the Commission chairperson to keep the testimony flowing expeditiously, and her expressions of desire that the hearing not run over into a second day. The Commission has a legitimate interest in conservation of time and personnel resources. It hardly offends fundamental notions of fairness for a hearing officer to suggest that certain evidence be presented by stipulation, or that counsel forego presentation of witnesses whose testimony is repetitive and cumulative of what has already been presented through other witnesses. Upon reviewing this record as a whole, we find no suggestion that this case was handled by the Commission in a perfunctory fashion.

Next, Boris contends that the Commission erred by basing one of its findings on damaging hearsay evidence. The evidence in question related to alleged complaints from local environmental administrators regarding Boris's performance. Boris's counsel objected to the introduction of letters which contained these complaints. The Commission overruled the objection on the basis that the letters would be considered probative only on the question of whether

the Department received negative information from department outsiders regarding Boris's performance and competence; the evidence would not be considered for the truth of the statements contained in the letters. In its adjudication, the Commission stated:

. . . [S]everal complaints were received by the [Department] concerning [Boris's] inefficiency, incompetence and lack of expertise . . . , indicating [Boris's] inability to establish a productive working relationship with the directors of county environmental programs.

We find nothing improper in this statement. Evidence that complaints concerning Boris's behavior and performance were received from persons outside the Department is certainly relevant, especially in light of Boris's contention that the Department's allegations regarding his lack of expertise were merely a pretext for discrimination on the basis of age and his supervisor's personal dislike of him. Furthermore, the statement suggests no finding that the allegations and characterizations contained in the letters are true; it merely makes an inference from the fact that the complaints were lodged that there was some degree of alienation between Boris and county administrators with whom he came in contact in the course of his work.

Boris's next contention is that he was improperly foreclosed from presenting evidence to refute statements contained in performance reports from the period 1975-1977. The Commission ruled that the evidence was inadmissible because Boris was attempting to challenge the basis for performance evaluations from which he took no timely appeal. We held in *Ellis v. Department of Transportation*, 33 Pa. Commonwealth Ct. 354, 381 A.2d 1325 (1978), that

service ratings are appealable personnel actions under Sections 905.1[4] and 951(b) of the Civil Service Act, and 4 Pa. Code §105(a)(14). Since the twenty day limitation prescribed by Section 951(b) is mandatory,[5] the Commission was correct in ruling that Boris was foreclosed from challenging the 1975-1977 evaluation. *See Silverman v. Department of Education*, 70 Pa. Commonwealth Ct. 444, 454 A.2d 185 (1982); *Ellis*. Even if Boris had not waived his right to challenge the underlying bases for the evaluations, we believe that the Commission's ruling would be harmless because it made clear that its decision would not be predicated upon previous performance evaluations. Nor does the adjudication itself suggest that the Commission materially relied on the 1975-1977 evaluations in reaching its decision. Thus, Boris's own failure to pursue his appeal rights, as well as the Commission's nonreliance on the challenged evaluations undermine Boris's argument.

We also find no lack of fundamental fairness in the Commission's refusal to admit into the record Boris's pre-1976 performance evaluations. Those evaluations had marginal, if any, probative value in light of the differences in responsibilities and expertise required by his pre-1976 positions and those required by his position as a Vector Control Consultant. Furthermore, the Department stipulated that Boris's competence in his pre-1976 positions was not being questioned.

---

[4] *Id.*

[5] Section 951(b) states in pertinent part:

(b) Any person who is aggrieved by an alleged violation of section 905.1 of this act may appeal in writing to the commission within twenty calendar days of the alleged violation. . . .

Boris's last procedural challenge is on the ground that the Commission did not enforce a subpoena duces tecum against the Department. We reject this contention. Prior, to the hearing, Boris's counsel served a subpoena on the Department for, apparently, a large volume of documents. Due, purportedly, to the timing and volume of the request, the Department did not respond to the subpoena until the day of the hearing. Boris's counsel complained at the hearing that the response was late and incomplete. However, when the Commissioner solicited suggestions as to how to resolve the discovery problem, Boris's counsel stated that she would review the documents during the lunch break and make whatever request she thought appropriate in light of her review. Thereafter, Boris's counsel neither requested a continuance to further review the documents nor made a request to the Commission for enforcement of the subpoena. Under these circumstances, the Commission was justified in assuming that Boris's discovery demands were satisfied. Moreover, Boris has failed to identify what documents he was denied and how they would have been material to his claims in the appeal. We find no legitimate basis for Boris's contention that he was denied a fair hearing by virtue of being denied requested documents.

Finally, we reach the substantive issue, *i.e.,* whether the Commission was justified in finding "good cause" for Boris's removal. The standards which govern our review of this issue are clear. First of all, our scope of review is limited to a determination of whether or not the Commission erred as a matter of law or violated the employee's constitutional rights, and whether or not the findings necessary to the Commission's adjudication are supported by sub-

stantial evidence. *Petresky v. Department of Labor and Industry*, 80 Pa. Commonwealth Ct. 39, 470 A.2d 1117 (1984); *Konick Appeal*, 34 Pa. Commonwealth Ct. 502, 383 A.2d 1002 (1978). If the Commission's findings are supported by evidence sufficient to convince a reasonable mind to a fair degree of certainty, we must accept the findings and not substitute our own judgment as to either the credibility or the weight of the evidence. *Konick*. Furthermore, we have previously held that an employee is properly removed under the provisions of the Act if the removal is ". . . based on merit criteria related to the job and touches in some rational and logical manner upon competency and ability." *Konick; Kaplan v. State Civil Service Commission*, 13 Pa. Commonwealth Ct. 29, 317 A.2d 683 (1974). Our review of the record and the Commission's adjudication within the context of these standards convinces us that the removal must be sustained.

The Commission's findings that Boris's reports frequently required amendment or correction, that he failed to identify problems in the vector control plans he monitored, and that there were complaints from local program administrators about Boris's performances are amply supported by testimony of Boris's immediate supervisor as well as other departmental officials who had experience with Boris's work. There is no question that these findings are job related and demonstrate sufficient deficiencies in Boris's level of competence to justify removal. *See Kaplan*. Similarly, we find no basis in the record for reversing the Commission's conclusion that Boris failed to substantiate his claim of age discrimination.

Accordingly, we affirm the decision of the Commission.

558

ORDER

AND NOW, this 13th day of April, 1984, the order of the Pennsylvania Civil Service Commission is affirmed.