Joseph P. Weir, Petitioner *v.* Commonwealth of Pennsylvania, Department of Labor and Industry, Respondent.

Clark Krewson, Petitioner *v.* Commonwealth of Pennsylvania, Department of Labor and Industry, Respondent.

George W. Schildt, Petitioner *v.* Commonwealth of Pennsylvania, Department of Labor and Industry, Respondent.

Argued June 4, 1984, before Judges ROGERS, COLINS and BARBIERI, sitting as a panel of three.

*Elliot A. Strokoff, Handler, Gerber, Johnston, Strokoff & Cowden,* for petitioners.

*Richard C. Lengler,* Assistant Chief Counsel, with him, *Richard L. Cole, Jr.,* Chief Counsel, for respondent.

OPINION BY JUDGE ROGERS, July 19, 1984:

In these consolidated appeals, the petitioners, Joseph P. Weir, Clark H. Krewson and George W. Schildt, challenge the orders of the State Civil Service Commission (Commission) upholding their furloughs from State employment effective at the close of business on August 30, 1982 and directing the appointing authority, the Pennsylvania Department of Labor and Industry (Department), to reimburse the petitioners for such wages and emoluments that would have been earned on August 30, 1982.

The petitioners were originally furloughed from their civil service positions effective October 20, 1981 because of an alleged lack of work that resulted from a reorganization of the Department's Bureau of Vocational Rehabilitation into the Office of Vocational Rehabilitation. Petitioners Krewson and Schildt worked in the Bureau of Vocational Rehabilitation where Krewson held the position of Personnel Analyst IV, regular status, and Schildt held the position of Statistical Analyst Supervisor, regular status. Petitioner Weir was classified as a Rehabilitation Administrator I, regular status, and served as the Executive Secretary to the Governor's Committee to Employ the Handicapped. The Commission invalidated the October 1981 furloughs because the notice of furlough

130

in each case was signed by a personnel director, not the Secretary of the Department or his delegate, as required by law and, by orders dated August 13, 1982, directed that the petitioners be reinstated with back pay and "without prejudice to the appointing authority to, subsequent to . . . reinstatement, take such personnel action concerning [the petitioners], including matters which were the subject of this action, as it may decide." The Department appealed this action to the Commonwealth Court on September 7, 1982 and by order filed in June 1983, we affirmed the Commission's orders. *Pennsylvania Department of Labor and Industry v. Krewson*, 75 Pa. Commonwealth Ct. 275, 461 A.2d 905 (1983).

On August 26, 1982, the Department notified the petitioners that they were to be reinstated effective August 30, 1982 and advised them that "simultaneous with your return, you will be furloughed" effective at the close of business on August 30, 1982 because of a continuing lack of work. The letters also advised the petitioners that they "are not to report for work on August 30, 1982" because of the refurlough.

The present appeal requires us to review the second furloughs undertaken on August 30, 1982 which the Civil Service Commission, after a consolidated hearing, upheld by orders made May 25, 1983. The Commission found that a lack of work existed in August 1982 justifying the furloughs. However, it awarded the petitioners one day's back pay "so that it is clear that [the petitioners'] reinstatement was effective prior to furlough."

We must affirm the Commission's adjudication unless constitutional rights were violated, the adjudication was not in accordance with law or a necessary finding of fact was unsupported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704.

At the Commission hearing on the matter of the August 30, 1982 furloughs, the Department presented evidence regarding the circumstances surrounding each petitioner's furlough in light of the needs of its reorganized and decentralized Bureau (now "Office") of Vocational Rehabilitation. The Director of Vocational Rehabilitation testified that no work existed for petitioner Krewson's former position of Personnel Analyst IV, regular status, in which he functioned as the Department's central training director, because the Department's training program was revamped and decentralized as a result of the overall reorganization. He testified that at the time of Krewson's furlough there was a training director in each of the fifteen district offices and, consequently, no need for a central training director.

The Department presented evidence that no work existed for petitioner Weir's former position of Rehabilitation Administrator I, regular status, in which he served as the Executive Secretary to the Governor's Committee to Employ the Handicapped, because the Governor, by executive order, incorporated that committee into the Bureau of Vocational Rehabilitation and appointed the Bureau's director to serve as its executive secretary. Other duties performed by Weir in his former position were spread out among various bureau employees. The Department's witness explained that the Governor's intention in incorporating the committee into the Bureau of Vocational Rehabilitation was "to elevate the importance of the Governor's Committee to Employ the Handicapped, to also streamline it and make it more effective and responsive. . . ."

Two Department witnesses, its Director of Program Operations and its Director of Personnel, testified that the Department had no work for Petitioner Schildt's former position of Statistical Analyst Super-

visor because the Department's need for statisticians was reduced from three positions to one position following its reorganization and that the one statistician position existing in August 1982 was held by Petitioner Schildt, who had "bumped" into the position in lieu of his 1981 furlough from his supervisory classification. There was, consequently, no need for a statistician supervisor because there was only one individual, petitioner Schildt, functioning as a statistician.

The petitioners' principal argument is that the Department did not meet its burden of proving that a legitimate lack of work existed to justify their furloughs. Section 3(t) of the Civil Service Act (Act), Act of August 5, 1941, P.L. 752, *as amended*, 71 P.S. §741.3(s) defines furlough as "the termination of employment because of lack of funds or of work" and the appointing authority has the burden of going forward with proof to establish a prima facie case justifying the furlough. *See D'Amato v. Department of General Services*, 58 Pa. Commonwealth Ct. 489, 427 A.2d 1287 (1981).

The Commission made findings appropriate to this evidence and concluded that the furloughs were made for lack of work. The petitioners' first contention—that there was not substantial evidence supporting the finding that there was a lack of work for the petitioners—is clearly ineffective as our description of the testimony of the Department's witnesses shows. The petitioners principally rely in this aspect of their case on *Silverman v. Pennsylvania Department of Education*, 70 Pa. Commonwealth Ct. 444, 454 A.2d 185 (1982). In that case the Commission's action upholding a furlough was founded on reasoning to the effect that the abolishment of the petitioner's position by a reorganization automatically created a lack of work. We held that this was an incorrect test;

that the mere elimination of a position does not warrant furlough if the work remains; but that furlough was warranted if the elimination of the position was the result of lack of work. In this case, again as our summary of the evidence shows, the positions were eliminated because there was a lack of work. There was no work in the case of petitioner Krewson when, because the entire training function was decentralized, the need for central training direction was eliminated; in the case of Weir, when the committee of which he was executive secretary was incorporated into the Bureau of Vocational Rehabilitation, whose director acted as its executive; and in the case of Schildt, who indeed remains employed, when the statistical work formerly done by three persons could be performed by one person, Schildt, without need of the supervisory duties he had performed under the classification from which he was furloughed.

In short, the Department sought to reorganize its Bureau (now "Office") of Vocational Rehabilitation for purposes of decentralizing and streamlining its operations so as to reduce the need for staff positions and emphasize field operations and case services. In *Vovakes v. Pennsylvania Department of Transportation,* 71 Pa. Commonwealth Ct. 3, 7 n. 8, 453 A.2d 1072, 1074 n. 8 (1982), we stated that "[w]hile ... an elimination of positions pursuant to a reorganization does not automatically establish a 'lack of work', the testimony in this case indicates that the streamlining of the department brought about an actual 'lack of work'." We further stated that "... the laws of this Commonwealth have committed to the various administration officials, not to the Civil Service Commission or the courts, decisions as to what best promotes the efficiency of the agency's services to the public." *Id.* at 7, 453 A.2d at 1074. We may therefore not review the wisdom of the Department's decision to de-

centralize and streamline the operations of its Bureau of Vocational Rehabilitation, and nothing in *Silverman* can be read to question the Department's autonomy in this regard.

The petitioners cite Section 802 of the Act, 71 P.S. §741.802 which governs furloughs and which contains the following relevant language: ''In case a reduction in force *is necessary* in the classified service, no employe shall be furloughed while any probationary or provisional employe is employed in the same class. . . .'' (Emphasis added.) Their argument is that proof that the abolition of the petitioners' positions was necessary is a separate and distinct requirement from proof of lack of work or of funds as required by Section 3(t) of the Act and that this was not proved by the Department. We disagree. The ''necessary'' language of Section 802 does not constitute a separate and distinct evidentiary element but rather speaks directly to the burden of proving a lack of work or of funds so as to ensure that the furlough is a necessary and unavoidable consequence of a lack of work or of funds. Where, as here, an agency justifies its furlough action by proving an actual lack of work or of funds, it has proved that a reduction in its force was necessary within the meaning of Section 802 of the Act.

The petitioners next contend that the Commission committed reversible error because it went outside of the record in this case and relied for its decision upon evidence presented at the hearing held on January 19, 1982 in which the petitioners contested their initial furloughs of October 1981. The petitioners correctly point out that the record of those prior proceedings was never offered into evidence at the hearing of this appeal, which was held on January 13, 1983 and which concerned the validity of the refurloughs

which were to have become effective at the close of business on August 30, 1982.

There is no dispute that the Commission indeed considered the evidence presented in the prior appeals. Its adjudications of May 25, 1983 contain the following language:

> We specifically note that the record developed in [the petitioners'] initial appeal[s] to this Commission . . . is hereby incorporated as relevant to the present appeal.
>
> . . . .
>
> In considering all the evidence which has been presented to this Commission in both the original appeal and the present action, we believe that a valid lack of work existed. . . .

We do not agree, however, that this warrants reversal. Our review of the record shows that the petitioners indeed were participants in the board's action. They raised the matter of the first hearing by references to arguments previously made. The petitioners' counsel stated to the Commissioners that "[o]ne of our positions, in addition to the legal position that was raised in the course of the first adjudication, is . . . ." Also, one of the petitioners, on the form for appeal filed with the Commission, referred to documents from his first appeal to support his second appeal by writing, "See attached sheets from original appeal." More importantly, however, the record of the January 13, 1983 hearing standing alone contains substantial evidence in support of the Commission's necessary finding that an actual lack of work existed to justify the furloughs. Finally, the petitioners do not specify what in the evidence of the first hearing was used by the Commission in the record, or how it was mutually harmful to them.

The petitioners next contend that the furloughs at issue were, in reality, "paper" or "sham" fur-

loughs which were a subterfuge for the Department's intention to stop its back pay liability on the earlier Commission decision ordering reinstatement of the petitioners pending the Department's appeal of that order to this Court. The argument, as we understand it, is that the Commission disregarded evidence to the effect that the Department reinstated and immediately furloughed them only for the purpose of ending its back pay liability. The petitioners point to the following testimony by the Department's chief personnel officer to support their position:

Q: Isn't it a fact that this refurlough, we will call it, has a fringe benefit or was thought to have the fringe benefit of stopping the liability from running on the original adjudications?

A: As far as I was aware of, it would do that.

Q: And insofar as conversations that you witnessed in which the Secretary was present, these opinions were known to him. Is that not correct?

A: As far as I know, yes, sir, they were.

The petitioners assert that such facts prove circumstantially that the petitioners were furloughed not for lack of work but only for the purpose of limiting the Department's financial liability. In this the petitioners would have us find the facts; but we "will not weigh, but only examine the evidence before [us] and will not substitute [our] judgment for that of the Commission." *Silvia v. Pennhurst Center*, 63 Pa. Commonwealth Ct. 75, 78-9, 437 A.2d 535, 536 (1981). We repeat, substantial evidence in this record supports the Commission's findings and conclusions that the petitioners were furloughed for lack of work.

The petitioners finally urge that their furloughs must be invalidated because they did not receive time-

ly notice. They direct our attention to Commission Management Directive No. 580.20(4)(e), as amended, which directs agencies to give their civil service employees thirty days' written notice before the effective date of a furlough action. However, they did not raise this when they were before the Commission. Section 703(a) of the Administrative Agency Law, 2 Pa. C. S. §703(a) provides:

A party who proceeded before a Commonwealth agency under the terms of a particular statute shall not be precluded from questioning the validity of the statute in the appeal, but such party *may not raise upon appeal any other question not raised before the agency* . . . unless allowed by the court upon due cause shown. (Emphasis added.)

*See also* Pa. R.A.P. 1551.

Our review of the record reveals that the petitioners made no reference during the Commission proceedings to Management Directive No. 580.20, or to the alleged improprieties of the notices they received. Petitioners Weir and Krewson, on their appeal forms filed with the Commission, gave as their reasons for appealing their furloughs:

My work is still being done so that LACK OF WORK is NOT THE REASON for my FURLOUGH. *FURTHER,* other provisions of the Act, related statutes, and Commonwealth guidelines, rules, etc. were violated in my furlough action.

Petitioner Schildt gave as his reason, "See attached sheets from original appeal [and] simply wanted to ignore civil service and put their own people in key jobs."

At the Commission hearing, counsel for the petitioners gave their reasons for appeal as follows:

Petitioners' Counsel (P.C.):

I believe that the appeals also suggest that there were other violations of related statutes of Commonwealth guidelines, rules, et cetera, and that it's related to the lack of work issue.

Department's Counsel (D.C.):

I am unaware of those . . . . What are they? The exhibits were brought in where there was no lack of work by Mr.—according to the Commission, by Mr. Weir, no lack of work by Mr. Krewson and Mr. Schildt's was essentially that the Department wanted to put their own people in the key jobs. Are there other [reasons for appeal] that were cited that I am unaware of?

P.C.:

Well, on the appeal form itself, there is a reference to under provisions of the Act, related statutes and Commonwealth guidelines. Are you asking for a specification at this time?

D.C.:

Yes.

P.C.:

One of our positions, in addition to the legal position that was raised in the course of the first adjudication, is that none of the appropriate policies, guidelines, management directives with respect to furloughs were followed . . . and I would renew the objections that we had made earlier with respect to the fact that the furloughs were not approved by the State Board of Vocational Rehabilitation, nor was there any fiscal note pertinent to the reorganization.

At the close of the Department's case, the petitioners rested without offering any testimony, evidence, argument or brief.

We are constrained to view such references to "appropriate policies, guidelines, management directives" and "provisions of the Act, related statutes, and Commonwealth guidelines, rules, et cetera" as falling short of the standard of specificity required to overcome the waiver rule as described in *Wing v. Unemployment Compensation Board of Review*, 496 Pa. 113, 436 A.2d 179 (1981), in which case the Pennsylvania Supreme Court explicitly held the waiver rule in civil cases, outlined in *Dilliplaine v. Lehigh Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974), applicable to administrative proceedings. The petitioners' objections were not specific enough to enable the Department to counter an allegation of untimely notice or the Commission to rule on the issue.

Orders affirmed.

### ORDER

AND Now, this 19th day of July, 1984, the orders of the Pennsylvania State Civil Service Commission in the above-captioned matters are affirmed.