Eastern Pennsylvania Psychiatric Institute, Department of Public Welfare, Petitioner *v.* Portia Russell, Respondent.

Eastern Pennsylvania Psychiatric Institute, Department of Public Welfare, Petitioner *v.* Martha T. Kratky, Respondent.

Eastern Pennsylvania Psychiatric Institute, Department of Public Welfare, Petitioner *v.* Frederick Newman, M.D., Respondent.

Eastern Pennsylvania Psychiatric Institute, Department of Public Welfare, Petitioner *v.* Donald O. Rudin, M.D., Respondent.

Eastern Pennsylvania Psychiatric Institute, Department of Public Welfare, Petitioner *v.* David Levitt, M.D., Respondent.

Eastern Pennsylvania Psychiatric Institute, Department of Public Welfare, Petitioner *v.* Samuel M. Peacock, Jr., M.D., Respondent.

Eastern Pennsylvania Psychiatric Institute, Department of Public Welfare, Petitioner *v.* Paul Mueller, M.D., Respondent.

Eastern Pennsylvania Psychiatric Institute, Department of Public Welfare, Petitioner *v.* Walter W. Baker, Respondent.

Eastern Pennsylvania Psychiatric Institute, Department of Public Welfare, Petitioner *v.* Joanne Antanavage, Respondent.

Eastern Pennsylvania Psychiatric Institute, Department of Public Welfare, Petitioner *v.* Teofila Artymyshyn, Respondent.

Eastern Pennsylvania Psychiatric Institute, Department of Public Welfare, Petitioner *v.* Carolyn Dunlap, Respondent.

Eastern Pennsylvania Psychiatric Institute, Department of Public Welfare, Petitioner *v.* Roy L. Joshlin, Respondent.

Eastern Pennsylvania Psychiatric Institute, Department of Public Welfare, Petitioner *v.* Alma E. Lloyd, Respondent.

Eastern Pennsylvania Psychiatric Institute, Department of Public Welfare, Petitioner *v.* Hadassah Freifelder, Respondent.

Eastern Pennsylvania Psychiatric Institute, Department of Public Welfare, Petitioner *v.* Irma Kostyk, Respondent.

Eastern Pennsylvania Psychiatric Institute, Department of Public Welfare, Petitioner *v.* Patricia S. Lewis, Respondent.

Eastern Pennsylvania Psychiatric Institute, Department of Public Welfare, Petitioner *v.* Sarah W. Perry, Respondent.

Eastern Pennsylvania Psychiatric Institute, Department of Public Welfare, Petitioner *v.* Dolores J. Smith, Respondent.

Portia Russell et al., Petitioners *v.* Eastern Pennsylvania Psychiatric Institute, Department of Public Welfare, Respondent.

Argued February 2, 1983, before President Judge CRUMLISH, JR. and Judges MACPHAIL and DOYLE, sitting as a panel of three.

394

*James S. Marshall,* Assistant Counsel, for petitioner, Department of Public Welfare.

*Michael I. Levin, Cleckner and Fearen,* for respondents, Portia Russell et al.

*Stephen W. Wilson, Murphy and Slota,* for respondent, Frederick L. Newman, M.D.

OPINION BY JUDGE DOYLE, October 3, 1983:

The Department of Public Welfare (DPW) here appeals the decision and order of the Pennsylvania State Civil Service Commission (Commission) which sustained in part and overruled in part DPW's furlough of eighteen individual employees. Sixteen of the eighteen furloughed employees cross-appeal.

The employees involved in these appeals[1] formerly held positions on the research staff of the Eastern

Pennsylvania Psychiatric Institute (EPPI), a state-owned facility created by statute to provide research, training, and service in the mental health field.[2]

Anticipating a reduction in state funding for EPPI, DPW negotiated a contract with the Medical College of Pennsylvania (MCP) under which MCP would assume complete management of EPPI and continue the facility's present services. On August 14, 1980, DPW notified all state employees at EPPI that they would be furloughed on September 14, 1980, the effective date of the contract with MCP.

On September 12, 1980, the Commonwealth Court issued a preliminary injunction preventing DPW from proceeding on its contract with MCP.[3] In light of this development, DPW decided to continue operations at EPPI at a reduced level, rescinding the furloughs of some employees while keeping other furloughs, including those issued to employees of the research staff, in effect.

In December, 1980 the state legislature amended EPPI's enabling statute to provide clear authority for the private management of EPPI under contract.[4]

---

[1] The following eighteen employees are respondents in DPW's appeal: Walter W. Baker, Samuel M. Peacock, Donald O. Rudin, Joanne Antanavage, Teofila Aptymyshyn, Carolyn R. Dunlap, Hadassah E. Freifelder, Roy L. Joshlin, Irma Kostyk, Martha T. Kratky, David R. Levitt, Patricia S. Lewis, Alma E. Lloyd, Sarah W. Perry, Portia B. Russell, Dolores J. Smith, Frederick L. Newman, and Paul Mueller. Of these, all but Newman and Mueller are also petitioners in employees' cross-appeal.

[2] Section 1 of the Act of April 18, 1949, P.L. 599, *as amended*, 50 P.S. §581.

[3] *White v. Department of Public Welfare* (No. 2000 C.D. 1980, filed September 12, 1980.)

[4] Section 3.1 of the Act of April 18, 1949, P.L. 599, *as amended*, added by Section 2 of the Act of December 3, 1980, P.L. 1091, 50 P.S. §583.1.

Subsequently, the Commonwealth Court lifted its injunction and DPW entered into a new contract with MCP. Concurrent with the effective date of the contract, the remaining state employees at EPPI were furloughed on January 9, 1981.

Eighteen of the employees furloughed on September 14, 1980 filed timely appeals with the Pennsylvania State Civil Service Commission (Commission). After a consolidated hearing on March 26, 1981, the Commission held that DPW's September 14, 1980 furloughs were improper, and granted the employees back pay for this period. The Commission also held, however, that DPW properly furloughed all EPPI employees on January 9, 1981, and therefore denied employees' requests for reinstatement and for back-pay after this date.[5]

DPW appeals from the Commission's decision that the furloughs of September 14, 1980 were improper, while sixteen of the eighteen furloughed employees[6] appeal from the Commission's decision that the furloughs were proper after January 9, 1981.

In reviewing a decision of the Civil Service Commission, this court is limited to a determination of whether or not the constitutional rights of the petitioner have been violated, an error of law has been committed or a necessary finding of fact was unsupported by substantial evidence. *Vovakes v. Depart-*

---

[5] On September 2, 1981 the Commission entered seventeen identical orders, one for each employee. Each order granted back-pay for the period of September 14, 1980 through January 9, 1981, less wages earned under the public laws of Pennsylvania. On September 8, 1981 the Commission entered an order for the eighteenth employee, Frederick Newman, which differs only in that it granted back pay for the period of September 14, 1980 through November 30, 1980.

[6] Frederick L. Newman and Paul Mueller have not filed petitions for review. *See* note 1, *supra.*

*ment of Transportation,* 71 Pa. Commonwealth Ct. 3, 453 A.2d 1072 (1982); *Whipple v. Department of Public Welfare,* 70 Pa. Commonwealth Ct. 11, 452 A.2d 296 (1982).

## Appeal of DPW

DPW contends that the evidence did not support the Commission's finding that the September 14, 1980 furlough was improper. The furlough of employees under Section 802 of the Civil Service Act[7] is proper only when a lack of work or a lack of funds has been shown to exist.[8] In concluding that DPW failed in their attempt to prove lack of funds, the Commission found that approximately $4.17 million in available funds remained in EPPI's budget at the time of the September 14, 1980 furlough. After a careful review of the record, we conclude that the finding of fact is supported by substantial evidence.

DPW directs our attention to the Commission's reference to a $600,000 research budget described by the Commission as "particularly damaging" to DPW's attempted proof of lack of funds. DPW contends that this $600,000 figure was not contained in a formal finding of fact nor substantiated by any evidence, and therefore was an improper basis on which to conclude that there was no lack of funds.

We note that our scope of review extends only to *necessary* findings of facts. Whether or not the $600,000 figure was included in a finding of fact or supported by the evidence is irrelevant in light of the finding that over $4 million in general funding was

---

[7] Act of August 5, 1941, P.L. 752, *as amended,* 72 P.S. §§741.1-741.1005.

[8] A "furlough" is defined as "the termination of employment because of lack of funds or of work." Section 3 of the Civil Service Act, 71 P.S. §741.3(t).

available. This latter finding, well supported by the evidence, was a proper basis on which to conclude that there existed ample funding at the time of the initial furlough. We need not consider the Commission's failure to include the additional $600,000 amount in its findings of fact, because such a finding was not necessary to support the Commission's conclusion of law.[9]

Notwithstanding the availability of $4.17 million in funding, DPW contends that funding was inadequate to sustain full operations at EPPI for the remainder of the fiscal year. DPW was required to prove not merely that funding was inadequate, however, but also that a rational relationship existed between the lack of funding and the furloughs undertaken. *Department of Transportation v. State Civil Service Commission,* 10 Pa. Commonwealth Ct. 310, 309 A.2d 445 (1973).

DPW contends its decision to furlough the research staff of EPPI was rationally related to EPPI's enabling act, under which EPPI's research function is secondary to its primary function of providing patient treatment. The Act stated, in pertinent part:

The institute shall accept patients with mental, neurological and related disorders who present special problems in diagnosis and treatment, including those transferred by the department from other State Hospitals. It shall provide training and teaching to graduate and undergraduate students in the mental health

---

[9] Similarly, DPW's objection to the Commission's finding that "[o]nly those furloughs involving the research staff of EPPI were carried out after September 13, 1980" need not be considered because such a finding was not necessary to support the Commission's conclusion of law.

field and shall conduct research into the causes, prevention, treatment and cure of mental neurological and related disorder.[10]

There is nothing in this language which establishes patient treatment as a ''primary function''; rather, the language is clear that patient treatment, training, and research are to be considered as equally necessary functions of EPPI. Therefore, DPW's decision to furlough the entire research staff while retaining EPPI's other functions cannot be justified. The Commission was correct in concluding that DPW failed to show a rational relationship between the furlough of the research staff and the general lack of funding.

## Employees' Appeal

Employees' first contention is that the contract between DPW and MCP is unconstitutional. This issue has been resolved by this court in *Pennsylvania Association of State Mental Hospital Physicians v. Commonwealth,* 63 Pa. Commonwealth Ct. 307, 437 A.2d 1297 (1981). In *Pennsylvania Association,* we held that the contract between DPW and MCP did not violate Article III, Section 30 of the Pennsylvania Constitution because the contract provided for DPW's payment for services rendered by MCP, rather than for an unlawful appropriation.

Employees also contend that various procedural defects resulted in a violation of their due process rights and require the Court to reverse the Commission's decision. Employees first argue that they were not given adequate notice of the furlough because

[10] Formerly Section 1 of the Act of April 18, 1949, 50 P.S. §581. The 1980 amendment to Section 1 of this Act omitted the first sentence of the quoted material relating to patient treatment. *See* Act of December 3, 1980, P.L. 1091, 50 P.S. §581.

their only notice, issued on August 14, 1980, set forth an invalid contract between DPW and MCP as the reason for the furlough.[11] Employees contend that DPW was required to issue new notices once it entered into a valid contract with MCP on January 9, 1981, setting forth this contract as the reason for the furlough after that date.

In the case of a furlough action, the written notice required under section 950 of the Civil Service Act[12] need not set forth the reasons for the furlough. *Department of Public Welfare v. Magrath,* 14 Pa. Commonwealth Ct. 257, 321 A.2d 403 (1974).[13] The notice is sufficient if it adequately informs the employee of the fact that he will be furloughed. The employees in this case were informed of their furloughs by the notice of August 14, 1980. The fact that the furloughs were not justified on the date that they commenced does not affect the sufficiency of the notice given. The employees were well aware of their furloughs and the fact that they continued through January 9, 1981. DPW was under no requirement to ap-

---

[11] The written notice stated, in pertinent part:

Due to the reduced amount of funding provided for EPPI in the 1980-81 budget, the Department has decided that in order to continue the operation of EPPI at or near its present functioning level, it is necessary to enter into an agreement with the Medical College of Pennsylvania to operate the institute. Therefore, I regret to advise you that you will be furloughed from your present position effective September 14, 1980.

[12] 71 P.S. §741.950.

[13] The written notice is required to set forth reasons only in cases of permanent separation, suspension for cause, or demotion of a regular employee. Section 950 of the Civil Service Act, 71 P.S. §950. *See* 4 Pa. Code §105.3 (requiring a statement of reasons additionally in cases of removal, resignation by abandonment and involuntary retirement.)

prise the employees of the additional reasons, if any, which justified the furlough's continuance on January 9, 1981.

The employees also assert that they were denied due process by the lack of pre-trial discovery. A review of the record, however, indicates that counsel for the employees was allowed to review documents in an adequate manner prior to the hearing. Employees' contention that they were entitled to a broader form of discovery has not been substantiated by any case law suggesting that such a right exists in administrative hearings. In the absence of such a right, the fact that some adequate form of discovery was allowed is sufficient to show that no violation of due process rights occurred.

Employees next argue that the consolidation of their appeals into a single hearing violated their due process rights. In *Ellis v. Department of Transportation*, 33 Pa. Commonwealth Ct. 354, 381 A.2d 1325 (1978), this Court held that a similar consolidation of appeals by the Commission did not violate due process where no evidence was shown of unfairness or partiality in the hearing. Here, as in *Ellis*, there has been no evidence shown of unfairness or partiality. A review of the record fails to substantiate employees' claim that the number of appeals resulted in confusion, or that this confusion affected the Commission's ability to reach a proper conclusion. Therefore, the consolidation did not violate due process rights.

Employees' final due process claim is based upon the lack of a pre-termination hearing. Due process does not require a pre-termination hearing in cases such as this, where employee rights are not adversely affected as a result of the delay. *Andresky v. West Allegheny School District*, 63 Pa. Commonwealth Ct.

222, 437 A.2d 1075 (1981).[14]   Here, as in *Andresky,* the employees were not stigmatized by the furlough, nor did they lose their rights to reimbursement or reinstatement as a result of the delay.   Therefore, employees' due process rights were adequately protected by the hearing held subsequent to the effective date of their furloughs.

For the foregoing reasons, we affirm the orders of the Civil Service Commission.

### ORDER

Now, October 3, 1983, the orders of the State Civil Service Commission in the above referenced matter, docketed by the Commission as Appeal Nos. 3310, 3312-3314, 3316-3320, 3322-3326, and 3328-3331, are hereby affirmed.

---

[14] In *Andresky,* this Court considered the lack of a pre-termination hearing in the suspension of public school teachers due to a decrease in student enrollment.   In holding that the suspended teachers' due process rights were adequately protected by a post-termination hearing, the court noted that the teachers were not adversely affected by the delay, as they were not stigmatized by the suspension, nor did they lose their statutory reinstatement rights.