484 A.2d 755

COMMONWEALTH of Pennsylvania, DEPARTMENT OF STATE, Appellant,

v.

Eugene H. STECHER, Leroy L. Craig, Clayton O. Scott, and Theodore J. Charney, Appellees.

Supreme Court of Pennsylvania.

Argued May 15, 1984.

Decided Nov. 20, 1984.

204

Edward D. Frank, II, David F. Phifer, Kenneth E. Brody, John P. Krill, Harrisburg, for appellant.

Fred Speaker, Harrisburg, for appellees.

Before NIX, C.J., and LARSEN, FLAHERTY, McDER-MOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

Appeals were taken to Commonwealth Court by the Commonwealth of Pennsylvania, Department of State (Department), from a decision of the Civil Service Commission which ordered the reinstatement of individuals who had been furloughed from their positions of employment in the Bureau of Professional and Occupational Affairs (Bureau), an agency of the Department of State responsible for twenty-two occupational licensing boards. Commonwealth Court affirmed the Civil Service Commission's order of reinstatement. *Commonwealth, Department of State v. Stecher*, 74 Pa.Commw.Ct. 45, 459 A.2d 851 (1983). The instant appeal ensued.[1]

Appellees, the individuals who had been furloughed from the Bureau, performed administrative functions related to the functioning of the Commonwealth's occupational licensing boards, including budgeting, legislative review, complaint processing, drafting of regulations and procedures, rationalization of operations, and general supervisory tasks. During the period preceeding July 1, 1980, the Bureau had been incurring expenditures at a deficit level, i.e. spending more than it was appropriated. The Bureau had been permitted to carry-over such deficits from one fiscal year to another until, on July 1, 1980, the Secretary of Budget and Administration directed all Commonwealth agencies to refrain from overspending their appropriations. In response to this budgetary constraint, the Bureau found it necessary to reduce its spending. It eliminated certain programs and furloughed a number of employees, including appellees. The furloughs went into effect on August 27, 1980, whereupon duties previously performed by appellees were reas-

---

1. This case was reassigned to this writer on June 19, 1984.

signed to other personnel in the Bureau, and appellees' positions were abolished.

 On October 16, 1980, however, a supplemental appropriation of $378,000 was made to cover the Bureau's deficit for the 1980–1981 fiscal year. The Civil Service Commission took administrative notice[2] of this appropriation, and found that the Bureau's lack of funds was thereby cured. The Department argued that the furlough of appellees was justified, not only by a lack of funds, but also by a lack of work in the Bureau. A "furlough" is defined by Section 3(s) of the Civil Service Act, 71 P.S. § 741.3(s), as a "termination of employment because of lack of funds or of work." When there has been called into question the validity of a furlough, the appointing authority has the burden of going forward with proof to establish a prima facie case justifying the furlough, viz. that the furlough resulted from a lack of funds or a lack of work. 4 Pa.Code § 105.15. The Civil Service Commission did not accept the Department's claim that there was a lack of work, and, consequently, held that the furloughs were not justified beyond the date of the supplemental appropriation. Appellees were, therefore, ordered reinstated with back pay from October 16, 1980.

 In rejecting the Department's argument that there was a lack of work, the Commission reasoned that no

2. As to the propriety of the Commission's taking official notice of the supplemental appropriation, we note that an administrative agency may take notice of any matter that may be judicially noticed by a court. 1 Pa.Code § 35.173. Accordingly, in *Snipas v. Department of Public Welfare*, 46 Pa.Commw.Ct. 196, 405 A.2d 1366 (1979), it was held to be proper for the Civil Service Commission to take official notice of the legislature's failure to pass a budget. Similarly, in the instant case, it was proper for the Commission to take notice of the supplemental appropriation, since it is within the Commission's province to take official notice of the enactment of relevant legislation. Evidence was adduced at the hearing that the Department had requested the supplemental appropriation, and that the appropriation had been passed by the legislature and presented to the Governor for signature. The Governor signed the bill eight days after the hearing, this being ten months prior to issuance by the Commission of its adjudication.

credible distinction could be drawn between the lack of work justification and the lack of funds basis for initiating the furloughs. The Commission stated,

> Although the appointing authority has attempted to establish the lack of work argument separate from that of lack of funds, we do not find that distinction credible. It is to be expected that in any furlough action the elimination of positions results in some reorganization and reassignments of duties to compensate for the lost services of the employes designated for furlough. That the appointing authority in the present action knew of its need to furlough and had sufficient time to devise compensating assignments does not alter the fact that a lack of funds was the essential cause of the decision to furlough. *It is our view that the mechanism devised to compensate for the loss of furloughed employes does not itself create a lack of work independently justifying the furlough.*

(emphasis added). We do not agree that, merely because furloughs are initiated at a time when there happens to be a lack of funds, the furloughs cannot be justified upon the independent basis that there exists a lack of work, even where the lack of work results from a reassignment of duties among employees. Indeed, the "mechanism designed to compensate for the loss of furloughed employees," to wit reassignment of duties, can, in itself create a lack of work independently justifying a furlough. Granted, management's action in this case may have been precipitated at a time when there was a lack of funds, i.e. at a time when management could no longer afford to continue its inefficiencies by supporting unnecessary employees in an organization where there was a lack of necessary work, but this does not diminish the extent to which the furloughs were, ultimately, the result of the fact that there was not enough work in the bureau as to *require* that the employees be retained.

When an appointing authority perceives that an employee's services are no longer required, in that the

amount of work the employee is performing does not warrant his retention in view of the fact that the employee's work can more efficiently, from a cost or operational standpoint, be performed through reassignment to others, the employee may be furloughed on grounds of lack of work. In *Department of Public Welfare v. Magrath*, 14 Pa. Commw.Ct. 257, 321 A.2d 403 (1974), Commonwealth Court dealt with this principle. In that case, the director of a state hospital had concluded that few surgical procedures were being performed by the hospital's staff surgeon, and, hence, the director initiated a program to have surgery performed by nonstaff surgeons on a fee basis. This program was found to create a lack of work that justified the furlough of the staff surgeon who had previously performed surgery at the hospital. As stated in *Magrath*, 14 Pa.Commw.Ct. at 260–261, 321 A.2d at 404,

> When [the staff surgeon's] position was eliminated and the work formerly done by him either dispensed with or otherwise arranged for, there existed a condition of lack of work which justified his termination. We have examined the record with the utmost care and can find no evidence that the appointing authority has subverted civil service requirements by simply engaging another person [non-staff surgeon] to perform his work.

Thus, the *Magrath* decision stands for the reasonable proposition that the appointing authority, in the exercise of its management discretion, may eliminate a position, and, thus, furlough an employee for lack of work, when services the employee performed may be more efficiently performed by other means.

■ Similarly, in *Vovakes v. Commonwealth, Department of Transportation*, 71 Pa.Commw.Ct. 3, 453 A.2d 1072 (1982), a department's abolition of a managerial position, undertaken in connection with a reorganization designed to streamline the functions of the department and to increase its efficiency, was held to be a legitimate exercise of the department's managerial prerogative. In *Vovakes*, the court aptly noted that, "the laws of this Commonwealth

have committed to the various administration officials, not to the Civil Service Commission or the courts, decisions as to what best promotes the efficiency of the agency's services to the public." Id. at 7, 453 A.2d at 1074. Decisions as to what tasks should be performed, and by whom, are particularly within the realm of an agency's management officials. If an agency seeks to accomplish its mission in a more efficient manner, by redistributing work among its employees, it is pursuing a commendable administrative objective. It can be said that, almost as a general rule, governmental institutions claim to be understaffed, and rare indeed is the agency that admits to having an excess of employees. Governmental agencies so easily become myopic as to their purposes, losing sight of the goal of adequately serving the public at the lowest possible cost to the taxpayers.

■ Although, quite obviously, when a particular position has been eliminated there is no longer work in *that* position, the courts below have held that the *mere* abolition of a position is not sufficient, *in itself,* to automatically establish a "lack of work" that justifies an employee's exposure to being furloughed. Rather, the focus has been upon whether there has in fact been a lack of work created by reorganizational streamlining efforts. See *Silverman v. Department of Education,* 70 Pa.Commw.Ct. 444, 454, 454 A.2d 185, 190 (1982); *Vovakes v. Commonwealth, Department of Transportation,* 71 Pa.Commw.Ct. at 7 n. 8, 453 A.2d 1074, n. 8. In the present case there was presented unrefuted testimony that appellees' positions were eliminated, that a reorganizational streamlining did in fact occur, and that management in good faith believed that the work of the Bureau could more efficiently be conducted in the absence of the positions which were eliminated. We believe the appointing authority has, by this showing, met its burden of demonstrating that the furloughs were proper.

■ The evidence indicates that the duties performed by the appellees were transferred to other personnel in the Bureau, meaning that the work previously performed by

them is still considered necessary and is still being done. Some would suggest that this fact alone supports a finding that there was no lack of work such as to cause or justify appellees' furloughs. The mere fact that duties assigned to appellees were reassigned to other personnel in the Bureau is not indicative that there was created by the reassignment an overload of work for the remaining employees to perform. Nor does it indicate that there had been sufficient work for the furloughed employees to perform, or that, in an efficiently organized workplace, the employees would have tasks to complete.

Indeed, a furloughed employee may have had a less than full load of work to perform, and co-workers may also have had a sufficiently less than full workload as to be capable of assuming, without overwhelming difficulty, the duties of a furloughed employee. To use an extreme example, if an employee had only one hour of realistic work to perform during an eight hour shift, and, upon furlough, that employee's work were reassigned to another employee who normally had only three hours of realistic work to perform during the same eight hour period, it would be untenable to suggest that, merely because the duties of the furloughed employee continue to be performed by another employee, there was no lack of work in the Bureau. Rare indeed would be the governmental employee who could be furloughed if the applicable test were to be whether *any* of his duties would continue to be performed by other workers. Such a rule would lead to an obviously ridiculous result, such as where an employee who does *absolutely nothing* in the course of a day's employment other than open *one* letter, answer *one* phone call, or stamp *one* document, would have to be retained. It is inconceivable that this was the intent of the legislature in creating the Civil Service system.

It is a managerial prerogative to reallocate work to enhance operational efficiency and to effect cost savings. To limit management's power in this area would be to draft a blueprint for an ever-expanding bureaucracy, which natu-

rally will tend to fuel institutional growth and taint the very purpose of our government. Government exists to serve the people, and should be manned by the fewest number of employees who can accomplish the task of serving the citizenry in the most efficient and least costly manner possible. To interpret the Civil Service Act as constraining reassignments of employees' duties, when management undertakes to eliminate what it believes to be unnecessary employees, would impose an impenetrable obstacle to attainment of greater efficiency in government, and would be, in effect, an outline for a handbook on inefficiency. The Civil Service Act was never intended to serve as a guarantee of lifetime employment, and, in view of its express provision authorizing furloughs based upon lack of work, does not require that employees be retained when workloads do not necessitate their continued presence.

Inasmuch as the Commission erred in holding that appellees' furloughs had not been shown by the Department to have been justified on grounds of lack of work, the appellees are not entitled to reinstatement.

Order of the Commonwealth Court reversed.

LARSEN, J., dissents.

ZAPPALA, J., files a dissenting opinion.

ZAPPALA, Justice, dissenting.

I dissent from the majority's finding that the furloughs of appellees were valid.

Appellees, Eugene H. Stecher, Leroy L. Craig, Clayton O. Scott, and Theodore J. Charney, held the civil service position of Administrative Officer II. As noted by the majority, they performed duties related to occupational licensing boards under jurisdiction of the Bureau of Professional and Occupational Affairs. Such duties including budgeting, legislative review, complaint processing, drafting of regulations and procedures, rationalization of operations, and general supervisory tasks. The Bureau is responsible for twenty-two licensing boards. Scott was responsible for the

State Board of Medical Education and Licensure. Each of the other Appellees was responsible for seven other licensing boards. The evidence, including testimony and job descriptions, indicates that these duties involved substantial work such as to keep Appellees occupied on a full-time basis through a thirty-seven and one-half hour work week.

Because of the reduced budget, appellees were furloughed, effective August 27, 1980. Their duties were reassigned to the Bureau's Commissioner and Deputy Commissioner and the licensing boards' secretaries and counsel. However, there was no indication of any reduction in work. The Commission found that the essential cause of the furloughs was lack of funds and not lack of work. It found that as of July 1, 1980, there was a lack of funds such as to justify furlough, but such lack of funds ceased to exist as of the October 16 supplemental appropriation. It did not accept Appellant's claim that there was a lack of work. Consequently, it found that the furlough could not continue to be justified and ordered Appellees reinstated with back pay from October 16, 1980.[1]

Appellant claims that the Commission's finding of no lack of work and order directing reinstatement were not supported by the evidence and contrary to law. The governing law is the Civil Service Act, Act of August 5, 1941, P.L. 752, 71 P.S. § 741.1 *et seq.* The Act empowers the Civil Service Commission, inter alia, to hear appeals in cases of furlough and to adopt rules to effectuate the provisions of the Act,

---

1. It should be noted that the testimony at the hearing establishes that the Department was arranging to have Pierce Clouser, a clerical supervisor, reclassified as Administrative Officer I. In their answer to Appellant's petition for a stay in the Commonwealth Court, Appellees averred that Clouser and one Rita Beck had been promoted to Administrative Officer I and were performing duties similar to those that Appellees had performed. This is a lower classification than Appellees' classification as Administrative Officer II. The promotion of Clouser and Beck would indicate that there was no lack of work. It cannot be a basis for such finding, as it is not in evidence. If it were necessary to establish a basis for such finding, I would deem it appropriate to remand for the taking of further evidence. However, I believe that a finding of no lack of work is proper even without evidence to establish the promotion of Clouser and Beck.

Art. II, § 203, as amended. Any employee aggrieved by a personnel action, including a furlough, has the right to appeal to the Commission, Art. IX, § 951, added by Act of August 27, 1963, P.L. 1257, § 27, 71 P.S. § 741.951. A furlough is defined as "the termination of employment because of lack of funds or of work", Art. I, § 3, as amended, 71 P.S. § 741.3. In case of an appeal of an adverse personnel action,

> The appointing authority shall go forward to establish the charge or charges on which the personnel action was based. If, at the conclusion of its presentation, the appointing authority has, in the opinion of the Commission, established a *prima facie* case, the employe shall then be afforded the opportunity of presenting his case.

4 Pa.Code § 105.15(e). That means that the appointing authority has the burden of going forward with the evidence to establish a prima facie case to justify a furlough, *D'Amato v. Department of General Services*, 58 Pa. Cmwlth. 489, 427 A.2d 1287 (1981), i.e. must establish a lack of funds or work, *Forbes v. Department of Transportation*, 61 Pa.Cmwlth. 641, 434 A.2d 892 (1981).

Section 951(c) of the Civil Service Act states that "all final decisions of the (Civil Service) Commission shall not be reviewable by any court." Accordingly, we have held that review of Commission decisions is on narrow certiorari and is limited to questions of jurisdiction to hear the matter, regularity of the proceedings, whether the Commission exceeded its authority, and whether any constitutional violations have occurred, *O'Piel v. State Civil Service Commission*, 424 Pa. 151, 225 A.2d 546 (1967). Appellant cites *O'Piel* as a basis for review and claims that the Commission exceeded its authority and conducted its proceedings in an irregular manner. I would not conduct this Court's review on that basis. In *Humphreys v. Civil Service Commission*, 7 Pa.Cmwlth. 566, 301 A.2d 400 (1973), the court held that § 951 was superseded by the Administrative Agency Law, Act of June 4, 1945, P.L. 1388, § 47, added by Act of December 2, 1968, P.L. 1135, No. 354 § 2, 71 P.S. § 1710.47.

That section provided in relevant part that "where an act of assembly expressly provides that there shall be no appeal from an adjudication of an agency, or that the adjudication of an agency shall be final or conclusive, or shall not be subject to review, ... any person aggrieved by such an adjudication may nevertheless appeal the same ..." That statute has been repealed and superseded by the Act of April 28, 1978, P.L. 202, No. 53, 2 P.C.S.A. § 101 *et seq.* Under the new act,

> Any person aggrieved by an adjudication of a Commonwealth agency who has a direct interest in such adjudication shall have the right to appeal therefrom to the court vested with jurisdiction of such appeals by or pursuant to Title 42 (relating to judiciary and judicial procedure).

2 P.C.S.A. § 702. The Act provides that judicial review shall apply to all Commonwealth agencies regardless of the fact that a statute expressly provides that there shall be no appeal from an adjudication of an agency, or that the adjudication of an agency shall be final or conclusive, or shall not be subject to review.

2 P.C.S.A. § 701. I would hold that adjudications of the Civil Service Commission are appealable and that our prior decisions limiting review to narrow certiorari are no longer applicable. Such holding is required by the statute and also by the Pennsylvania Constitution, Art. V, § 9, added April 23, 1968, which provides that

> There shall be a right of appeal in all cases to a court of record from a court not of record; and there shall also be a right of appeal from a court of record or from an administrative agency to a court of record or to an appellate court, the selection of such court to be as provided by law; and there shall be such other rights of appeal as may be provided by law.

I would apply the standard of review that we have established for appeals from administrative agency adjudications, which is that the adjudication must be upheld unless a necessary finding of fact is not supported by substantial evidence, an error of law has been committed, or there has

been a violation of constitutional rights, *Norfolk & Western Railway Co. v. Pennsylvania Public Utility Commission*, 489 Pa. 109, 413 A.2d 1037 (1980). This standard of review has been applied to the Civil Service Commission, *Vovakes v. Department of Transportation*, 71 Pa.Cmwlth. 3, 453 A.2d 1072 (1982). It is for the Commission to resolve questions of credibility and evidentiary weight, *Silverman v. Department of Education*, 70 Pa.Cmwlth. 444, 454 A.2d 185 (1982).

A lack of work may result from the reorganization of an agency, in which case a furlough will be proper. This is illustrated by *Department of Public Welfare v. Magrath*, 14 Pa.Cmwlth. 257, 321 A.2d 403 (1974). In that case the director of a state hospital had surgery performed by non-staff surgeons on a fee basis. That was found to create a lack of work such as to justify the furlough of a staff surgeon who had previously performed required surgery. On the other hand, in *Silverman v. Department of Education*, supra, the court held that the mere elimination of a position is not determinative of whether there is a lack of work and that a furlough is not justified where the abolition of a position creates a lack of work, rather than vice versa. In the instant case, the evidence indicates that the duties performed by Appellees were transferred to other personnel in the Bureau, meaning that the work performed by Appellees is still considered necessary and is still being done. In view of that situation and in view of the fact that Appellees were shown to have performed substantial work, I would hold that the evidence supports a finding that there was no lack of work such as to cause or justify Appellees' furloughs. I would find that in view of the fact that Appellees were occupied full-time, it was necessary for Appellant to show a work reduction in order to establish a lack of work. Appellant failed to meet its burden, having presented no evidence of a reduction in work. In *Eastern Pennsylvania Psychiatric Institute v. Russell*, 77 Pa. Cmwlth. 390, 465 A.2d 1313 (1983), which involved the

furlough of eighteen members of a hospital research staff, the evidence supported a finding that there was no lack of funds to justify the furlough, where $4.17 million in available funds remained in the hospital's budget. The evidence in the instant case supports a finding of no lack of funds, in view of the supplemental appropriation. I would hold that the Civil Service Commission's finding of no lack of funds or work was proper, being supported by the evidence, and must be upheld.

The majority misapplies the lack of work test by finding such lack on the basis of the reassignment of Appellees' duties. The majority opinion opens the way for a government agency to furlough employees at any time by reorganizing. It does not take account of whether there was a reduction in work, whether Appellees lacked sufficient work to keep themselves occupied, or whether the work performed by Appellees continued to be performed. The question of lack of work cannot properly be resolved without considering such factors.

The majority is further remiss in ignoring the fiscal situation that led to the furloughs. The supplemental appropriation was sought in order to restore the pre-existing personnel level. There was no point to the supplemental appropriation if the personnel reduction was due to lack of work. The Commission's termination of the furloughs as of October 16, 1980 and not before is reflective of the financial situation. The budget shortfall and supplemental appropriation are part of the fact situation and should not be cavalierly dismissed, as the majority does. If one takes proper account of what has occurred, one is compelled to conclude that the Commission was justified in finding that lack of funds and not lack of work was the cause of the furloughs, that the lack of funds ended on October 16, 1980, and that the furloughs could not properly continue after that date.

I would affirm the Order of the Commonwealth Court.