Thomas O'Byrne, Petitioner *v.* Commonwealth of Pennsylvania, Department of Transportation, Respondent.

Argued September 9, 1985, before Judges ROGERS and MacPHAIL, and Senior Judge BARBIERI, sitting as a panel of three.

*Joseph A. Klein,* for petitioner.

*Robert C. Bell,* Assistant Counsel, with him, *Spencer A. Manthorpe,* Chief Counsel, and *Jay C. Waldman,* General Counsel, for respondent.

OPINION BY JUDGE ROGERS, October 17, 1985:

The petitioner, Thomas J. O'Byrne, has appealed from an order of the State Civil Service Commission upholding his furlough from his former position in the classified service of Right-of-Way-Administrator, regular status, with the Pennsylvania Department of Transportation (department).

In January, 1983, the Secretary of Transportation ordered a reorganization of the four central bureaus of the department's Highway Administration. The primary objective of the reorganization was to decentralize the bureaus and transfer review responsibilities from central office staff to the district offices, thereby eliminating one layer of management and the duplication of work.

Members of two task forces, an Employee Task Force and an Executive Task Force, met with depart-

ment employees in discussion of how through decentralization and reorganization the work of the service divisions could be accomplished. During this consultation process, Mr. O'Byrne recommended consolidating his Right-of-Way Division and the Utilities and Grade Crossing Section, of which one Kenneth Walker was the chief.

The appointing authority prepared a plan of reorganization, the Office of Administration approved it and the Executive Board ratified the approval. Under the reorganization, the Right-of-Way Division was consolidated with the Utilities and Grade Crossing Section. Mr. Walker was chosen chief of the consolidated division. Mr. Walker was a licensed civil engineer, which Mr. O'Byrne was not. Mr. O'Byrne's administrative work as Right-of-Way Administrator was assigned to Mr. Walker and his other duties to others. Mr. O'Byrne's position as Right-of-Way Administrator was eliminated and he was furloughed. Mr. O'Byrne appealed this action to the Civil Service Commission.

The Civil Service Commission, after extensive hearings, decided that the appointing authority properly furloughed Mr. O'Byrne from his position as Right-of-Way Administrator for lack of work.[1]

Mr. O'Byrne argues that the Commission's finding that he was furloughed for lack of work was not supported by substantial evidence.[2] A furlough is defined at Section 3(s) of the Civil Service Act (Act),

[1] The Commission ordered that Mr. O'Byrne be paid for the period September 21, 1983 until September 28, 1983, which latter date it found as the effective date of his furlough.

[2] Our scope of review is to determine whether constitutional rights have been violated, an error of law has been committed or a necessary finding of fact was not supported by substantial evidence. 2 Pa. C.S. §704. *Vovakes v. Department of Transportation*, 71 Pa. Commonwealth Ct. 3, 453 A.2d 1072 (1982).

Act of August 5, 1941, P.L. 752, *as amended,* 71 P.S §741.3(s), as a "termination of employment because of lack of funds or of work." In *Department of State v. Stecher,* 506 Pa. 203, 484 A.2d 755 (1984), the Pennsylvania Supreme Court recognized that an appointing authority enjoys managerial discretion to reorganize its structures in the interest of efficiency and that in so doing, it may redistribute work, eliminate positions, and accordingly furlough employees for lack of work. *Id.* at 209, 484 A.2d at 758. However, in *Stecher,* Mr. Justice FLAHERTY writing for the court observed:

> the *mere* abolition of a position is not sufficient, *in itself,* to automatically establish a 'lack of work' that justifies an employee's exposure to being furloughed. Rather, the focus has been upon whether there has in fact been a lack of work created by reorganizational streamlining efforts. *See* Silverman v. Department of Education, 70 Pa. Commw. Ct. 444, 454, 454 A.2d 185, 190 (1982); Vovakes v. Commonwealth, Department of Transportation, 71 Pa. Commw. Ct. at 7 n. 8, 453 A.2d 1074 n. 8. (Emphasis in original.)

*Id.* at 210, 484 A.2d at 758-759.

The department's evidence introduced at the Commission hearing was to the effect that Mr. Walker was chosen to head the consolidated division because he was a licensed civil engineer and that the superiors of both men believed that the consolidated division should be headed by an engineer as the former Utility and Grade Crossing Section had been. There was also evidence that Mr. O'Byrne's duties were assigned in part to Mr. Walker and the remainder among other employees. Mr. O'Byrne maintains that this evidence does not support a finding of lack of work and that the opposite was proved by evidence he introduced to

the effect that concurrent with the reorganization there were insufficient right-of-way employees and the department contracted with a consulting firm to perform some of his former duties. This argument misses the point. Of course, right-of-way work remained to be done after the reorganization. The pertinent question was not that; but whether with the appointment of a person other than Mr. O'Byrne to head the consolidated divisions, there was work for Mr. O'Byrne as head of a division. The case is not unlike *Department of Public Welfare v. Magrath*, 14 Pa. Commonwealth Ct. 257, 321 A.2d 403 (1974), cited and commented upon with approval in *Stecher*. In *Magrath* we upheld the furlough of a staff surgeon of a state health facility by a new administrator for lack of work as the result of the implementation of a plan for the hire of non-staff surgeons to perform surgery on a case by case basis at the expense of the patients' insurance carriers.

Mr. O'Byrne further contends that the appointing authority's reorganization and decision to abolish his position were implemented in bad faith and contrary to the requirements of the Act.[3] We disagree. There

---

[4] Mr. O'Byrne cites as an illustration of the appointing authority's bad faith the fact that when he applied for the position of Right-of-Way Administrator II, a position in a lower classification than his former position, the appointing authority removed the classification, he says to preclude his application. According to 4 Pa. Code §101.1(d), an employee, "[u]pon notification of, and until the effective date of furlough, . . . [has] right of return to vacant positions in the appointing authority . . . to a class and status in the same or lower levels. . . ." Mr. O'Byrne applied for the lower level Right-of-Way Administrator II position on August 1, 1983. He was not notified of his furlough effective September 28, 1983 until August 8, 1983. The position of Administrator II was eliminated on August 2, 1983. The Commission concluded that Mr. O'Byrne had no right to placement as an Administrator II before he was notified of his furlough and its effective date. As we have observed in the body of our opinion, this matter seems to us to be a different personnel action from the furlough.

was ample evidence in support of the Commission's finding that the appointing authority's reorganization was implemented in good faith to streamline internal procedures and to promote efficiency. There is evidence that the Right-of-Way Division and the Utilities and Grade Crossing Section were combined because their duties were closely related. Indeed, Mr. O'Byrne admitted that in his early years with the department the right-of-way and utilities functions were jointly supervised. The department's Chief Highway Engineer testified, "these two functions are very closely related. . . . The acquisition of right-of-way frequently depends upon the relocation of utilities . . . the location of utilities depends upon the right of way available."

Mr. O'Byrne also contends that the appointing authority committed an error of judgment in concluding that a professional engineer should administer the newly consolidated division and that the chief of the division should, instead, have been an expert in right-of-way acquisition. This is precisely the kind of decision which is committed to the discretion of the appointing authority and not properly subject to being overturned by the Commission or this court. *Department of Public Welfare v. Magrath,* 14 Pa. Commonwealth Ct. at 261, 321 A.2d at 405.

Mr. O'Byrne also contends that the Civil Service Commission committed an abuse of discretion in denying his motion made at the first of six evidentiary hearings conducted by the Commission to amend his complaint to include an allegation that his furlough was an act of discrimination under Section 905.1 of the Act, *as amended,* added by Section 25 of the Act of August 27, 1963, P.L. 1257, 71 P.S. §741.905a, prohibiting personnel actions because of political, religious, union, race, national origin or other non-merit factors. The allowance of amendments is committed

to the discretion of the Commission and is regulated by Commission rules at 1 Pa. Code §§35.48, 35.49 and 35.50. Rule 35.48(b) provides interestingly that no amendment may be filed during a hearing unless allowed by the presiding officer. The presiding officer did not allow Mr. O'Byrne's motion but stated no reason for refusing. We note that Section 951 of the Act establishes a twenty-day limitation upon appeals to the Commission from personnel actions and it might be contended that this amendment injected a new cause after the statute had run. More cogent is the consideration that neither during the hearings nor in his briefs has the appellant described with any clarity what non-merit factor was the basis of his furlough. It may be his thesis that the department's insistence upon a licensed engineer to head the consolidated right-of-way and utility removal division was an act of discrimination against unlicensed persons. But this decision cannot reasonably be characterized as based upon a non-merit factor. Mr. O'Byrne has also emphasized the rejection of his application for placement in a lower position in the classified service; but this seems to be a personnel action separate from his furlough. In addition, our examination of this vast record consisting of the transcripts of six hearings and more than 100 exhibits, demonstrates that the Commission gave extensive rein to both parties in the introduction of evidence. The Commission expressly found that Mr. O'Byrne was not a victim of discrimination as defined in the Act. We discern no arbitrary or capricious disregard of the evidence in this determination and therefore no harm to Mr. O'Byrne occasioned by the refusal of the motion to amend.

Lastly, Mr. O'Byrne contends that the Commission erred in not holding his dismissal to be invalid because the department presented no evidence that

Sharon Wright, the appointing authority's Personnel Director who signed Mr. O'Byrne's furlough letter, had authority to do so. In *Moore v. Commonwealth of Pennsylvania*, 1 Pa. Commonwealth Ct. 73, 76, 272 A.2d 283, 284 (1970), we explained that "unless the removal action and the proceedings before the Civil Service Commission were carried out by appellant's 'appointing authority,' the adjudication appealed from cannot be sustained." In this case, the Secretary of Transportation was Mr. O'Byrne's appointing authority as defined in Section 3(e) of the Act, *as amended,* 71 P.S. §741.3(e). The Commission found that Sharon Wright had authority to sign the letter based on the testimony of the Secretary of Transportation that the reorganization and resultant furloughs had his specific approval. The fact that the senior officer of the appointing authority testified that Sharon Wright was his amanuensis only with respect to Mr. O'Byrne's furlough distinguishes this case from *Vaughan v. Department of Education*, 52 Pa. Commonwealth Ct. 38, 415 A.2d 150 (1980) and brings it within the holding of *Hughes v. State Civil Service Commission*, 17 Pa. Commonwealth Ct. 344, 331 A.2d 590 (1975).

Order affirmed.

## ORDER

AND Now, this 17th day of October, 1985, the order of the State Civil Service Commission in the above-captioned matter is affirmed.