537 A.2d 45

Pennsylvania Public Utility Commission, Petitioner v. Celeste Taylor, Respondent.

Celeste Taylor, Petitioner v. Pennsylvania Public Utility Commission, Respondent.

Argued October 5, 1987, before Judges CRAIG, DOYLE and BARRY, sitting as a panel of three.

*Louis G. Cocheres,* Assistant Counsel, with him, *Charles D. Shields, Jr.,* Assistant Counsel, *Daniel P. Delaney,* Deputy Chief Counsel, and *Charles F. Hoffman,* Chief Counsel, for petitioner-respondent.

*Anthony A. Seethaler, Jr.,* with him, *Eli A. Zlokas,* for respondent-petitioner.

OPINION BY JUDGE CRAIG, January 25, 1988:

These consolidated cases consist of a petition for review and a cross-petition for review of an adjudication in which the Civil Service Commission (commission) determined that the action of the Public Utility Commission (appointing authority) in demoting Celeste Taylor (employee) was proper, but that the appointing authority's furloughing her from the position to which she was demoted was improper.

The issues raised by the appointing authority's petition are (1) whether the commission's finding that the appointing authority failed to carry its burden of proving lack of work was properly supported, where the evidence related principally to the employee's performing services in a class of job different from the one from which she was furloughed and (2) whether the commission committed an error of law by considering whether any work existed for the employee rather than considering only whether work existed within her job classification.

Ms. Taylor's cross-petition for review does not challenge the commission's disposition of her demotion and furlough appeals, but rather advances a claim for payment for work performed out of class during a specific

period. The employee asserts that such a claim is different from a classification claim (a matter not within the jurisdiction of the commission) and is cognizable by this court.

The facts as found by the Civil Service Commission after a hearing are as follows. Ms. Taylor began work with the appointing authority in April of 1983 as a Clerk I, probationary status, performing duties as a State Work Program Trainee. In September of 1983 Ms. Taylor was reassigned to the appointing authority's Pittsburgh office where, although retaining her Clerk I classification, she worked as a Consumer Services Representative, a job whose title was later changed to Utility Complaints Investigator (UCI). She was the only employee in the Pittsburgh office in the classification of Clerk I. The appointing authority granted Ms. Taylor regular status as a Clerk I on January 21, 1985, and then promoted her to UCI, probationary status, as of January 23, 1985.

An Interim Performance Evaluation Report of Ms. Taylor as a UCI, probationary status, dated April 12, 1985, rated her performance overall as "Unsatisfactory." By letter dated June 13, 1985, the appointing authority removed Ms. Taylor from her position as a UCI, probationary status, effective June 25, 1985, and returned her to Clerk I, regular status. The same letter also furloughed her from her position as Clerk I for lack of work, effective the same time.

Ms. Taylor appealed her demotion from UCI to Clerk I and her furlough from the Clerk I position to the Civil Service Commission. After a hearing before Mary D. Barnes, Chairman, and Ethel Barnett, Commissioner, the commission issued an order (1) dismissing Ms. Taylor's appeal of her removal from UCI and return to Clerk I and (2) sustaining Ms. Taylor's appeal of her furlough from the Clerk I position and directing

that she be reinstated as a Clerk I and be reimbursed for back wages and benefits from the time of her furlough. The parties timely filed the petitions for review to this court described above.

### 1. *Petition of the Appointing Authority*

The definition of the term *furlough* is in section 3 of the Civil Service Act, Act of August 5, 1941, P.L. 752, *as amended,* 71 P.S. §741.3:

> (s) **'Furlough'** means the termination of employment because of lack of funds or of work.

In *Department of State v. Stecher,* 506 Pa. 203, 484 A.2d 755 (1984), a case in which the Department of State appealed from the Civil Service Commission's decision ordering reinstatement of furloughed employees of the Bureau of Professional and Occupational Affairs, the Pennsylvania Supreme Court described the burden of proof in a furlough case:

> When there has been called into question the validity of a furlough, the appointing authority has the burden of going forward with proof to establish a prima facie case justifying the furlough, viz. that the furlough resulted from a lack of funds or a lack of work. 4 Pa. Code §105.15.

*Stecher,* 506 Pa. at 207, 484 A.2d at 757.

Our scope of review of an administrative agency order is limited to a determination of whether constitutional rights were violated, whether errors of law were committed, or whether necessary findings of fact were not supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704; *Estate of McGovern v. State Employees' Retirement Board,* 512 Pa. 377, 517 A.2d 523 (1986); *Department of Public Welfare, Office of Medical Assistance v. Gelbaugh,* 96 Pa. Commonwealth Ct. 229, 506 A.2d 1017 (1986).

In addition, where the party with the burden was the only one to present evidence on an issue, but that party did not prevail on that issue, this court has held that if the burdened party presented evidence sufficient as a matter of law to prevail, then we must scrutinize the adjudication to determine whether the adverse determination stems from the factfinder's opinion that the evidence presented was not credible, or whether the factfinder committed an error of law in applying the law to the facts presented. *Kirkwood v. Unemployment Compensation Board of Review,* 106 Pa. Commonwealth Ct. 92, 525 A.2d 841 (1987).

> If specific credibility determinations appear that support the result of the adjudication, then we may affirm the decision below on the basis that the burdened party failed in his burden to *persuade* the factfinder. If, however, *specific* credibility determinations do not appear in the factual findings, in the discussion or conclusions, and no other *specific* explanation for the adverse determination appears in the adjudication, then we have no other alternative but to vacate the order below and remand for specific credibility findings and for an explanation of the agency's decision; otherwise we could not perform our appellate review function.

*Id.* at 97, 525 A.2d at 844 (emphasis in the original).

In this case the appointing authority does not assert a lack of funds as a reason for the furlough; therefore, the furlough may be justified only if the appointing authority meets its burden of proving a lack of work. As both sides acknowledge, the commission's salient finding of fact was as follows:

> Nonetheless, we cannot find the evidence offered by the appointing authority in support of furlough to be conclusive on the issue of lack of

work. Initially, the appointing authority's own witness (Lewis) admits uncertainty as to whether the position is actually justified by the amount of work. N.T. p. 69. Further, a close examination of the procedure employed by the appointing authority prior to appellant's furlough casts doubt upon the credibility of the appointing authority's position. Rather than an existing lack of work sufficient to support a Clerk I position, the situation, to our reasonable minds, appears quite different.

[The commission summarized Ms. Taylor's work history with the appointing authority.]

That appellant had sufficient work to perform during her tenure in the Pittsburgh office—both while classified as a Clerk I prior to her promotion, and later as a UCI—is unquestioned. For the appointing authority to contend that suddenly, upon her removal from UCI and return to Clerk status, no work exists for appellant, seems to this Commission an untenable position, absent stronger evidence of lack of work. We find that the appointing authority has failed to support its burden of proving a lack of work which stands as a basis for the furlough of appellant.

The burden was on the appointing authority to make out a prima facie case that Clerk I work did *not* exist in the Pittsburgh office. Ms. Taylor did not present evidence to prove that such work did exist. The appointing authority's evidence, if believed, would have been sufficient as a matter of law to meet its burden. Under these circumstances, this court's analysis in *Kirkwook* applies.

Applying the *Kirkwood* analysis, we find that the commission made an express credibility determination as the basis for its finding that the appointing authority

had not met its burden of proving lack of work. The commission considered the facts of the case as a whole, that is, it considered Ms. Taylor's history of employment (including the fact that Ms. Taylor had been fully occupied for over a year in the Pittsburgh office while classified Clerk I) as well as the testimony of officers of the appointing authority with regard to the existence of Clerk I work in the Pittsburgh office. Based on that consideration, the commission concluded that there was "doubt [as to] the credibility of the appointing authority's position" on the issue of lack of Clerk I work. Because the commission deemed the evidence offered by the appointing authority on the issue of lack of work to be less than fully credible, the commission determined that the appointing authority had not met its burden of establishing a credible prima facie case for a lack of Clerk I work. Under *Kirkwood,* this court must sustain the commission's decision based on the failure of the appointing authority to persuade the factfinder with sufficient credible evidence.

This analysis also responds to the appointing authority's assertion that the commission committed error of law by considering the issue of lack of work under the wrong standard, that is, by considering whether any work existed for the employee rather than whether any Clerk I existed. In fact, the commission never reached the point of weighing the appointing authority's evidence of lack of work under any standard. As discussed above, the commission considered the facts of the case overall in making its *credibility* determination with regard to the appointing authority's evidence on the issue of lack of Clerk I work. Once the commission determined that the appointing authority had not presented sufficient credible evidence to make out its prima facie case, then the commission did not need to weigh the evidence, and it did not do so.

Accordingly, we affirm the order of the Civil Service Commission finding that the Public Utility Commission improperly furloughed Ms. Taylor from her Clerk I position.

### 2. Cross-Petition of Celeste Taylor

Ms. Taylor's cross-petition for review asserts a claim for payment for work performed out of class for the period from December 7, 1983, through January 21, 1985. Ms. Taylor's initial appeal to the Civil Service Commission, which she filed pro se, formally appealed only the appointing authority's actions in demoting and then furloughing her. However, that initial appeal, beside requesting a hearing on the demotion and furlough to which she was entitled automatically under section 951(a) of the Civil Service Act, 71 P.S. §741.951(a), also alleged discriminatory conduct by her employer, entitling her to a hearing under section 951(b), 71 P.S. §741.951(b). On the appeal form Ms. Taylor filled out and submitted, she checked the box for "illegal procedure by agency" as the basis for her discrimination charge. Her explanation of that charge stated that the appointing authority had worked her out of class (performing UCI duties although classified Clerk I) during a period including that described in the cross-petition, and then failed to permit her to serve a full probationary period after the appointing authority finally formally promoted her to the UCI position.

Under the Civil Service Act, an appointing authority legally may remove a *probationary* employee without even giving a reason. Section 804, 71 P.S. §741.804.[1] If

----

[1] *Compare* the former version of section 804, which included the requirement that "[t]he appointing authority shall furnish the director with a statement in writing of the cause of the removal." That language was deleted from the section when it was amended by the Act of August 27, 1963, P.L. 1257.

the employee alleges that the authority acted for a non-merit, discriminatory reason, the burden is on the employee to prove discrimination. However, as discussed above, an appointing authority may furlough an employee only because of lack of work or lack of funds, and the burden is on the appointing authority to prove one or the other.

At the hearing before the commission, Ms. Taylor, represented by counsel at that point, offered some evidence to attempt to prove her charge of discriminatory demotion from her probationary UCI position. *In the alternative,* Ms. Taylor attempted to prove that when she achieved regular status, immediately before her promotion to UCI, the regular status she achieved must have been as a UCI because that was the only work she had ever performed. She argued, in other words, that she was *not* a probationary employee when she was demoted, despite the appointing authority's labeling her as such, so the rules applicable to the demotion of probationary employees should not be applied to her case.

After Ms. Taylor rested her case on the aspect of the proceedings challenging her demotion, Chairman Barnes dismissed that appeal on a motion by the appointing authority, ruling that Ms. Taylor failed to make out a prima facie case of discrimination. Implicit in the Chairman's dismissal of the challenge to the demotion was a rejection of the argument that rules other than those applicable to removal of probationary employees should govern the case. In addition, Chairman Barnes noted that the commission was not the proper forum for deciding classification issues.

At the end of the hearing, Chairman Barnes asked counsel for Ms. Taylor what remedies she sought. Counsel listed Ms. Taylor's claim for payment for work out of class first in his response, thus implying that Ms. Taylor was asserting this claim independently of her dis-

criminatory demotion claim, which already had been dismissed by that point. The opinion issued by the full commission made brief reference to the dismissal at the hearing of Ms. Taylor's appeal of her demotion, and then the opinion analyzed and ruled upon the question of the furlough. The opinion did not address Ms. Taylor's claim for payment for work performed out of class.

On this record we conclude that Ms. Taylor raised the issue of payment for out-of-class work at the hearing before the commission. Ms. Taylor asserts in her brief that she advanced a classification argument in her testimony before the commission (namely, the argument that the regular status she achieved must have been in the UCI classification), and she concedes that the commission correctly concluded that such a job classification matter was not within its jurisdiction. For this latter proposition, Ms. Taylor agrees with the appointing authority's citation of *Carr v. Department of Public Welfare*, 72 Pa. Commonwealth Ct. 78, 456 A.2d 240 (1983) and *Gorton v. State Civil Service Commission*, 35 Pa. Commonwealth Ct. 319, 385 A.2d 1026 (1978). More recently, this court held that "the [Civil Service] Commission lacks jurisdiction over classification issues. Instead, jurisdiction over classification matters lies exclusively with the Executive Board." *Wetzel v. State Civil Service Commission*, 77 Pa. Commonwealth Ct. 47, 50, 465 A.2d 69, 71 (1983) (citing *Carr* and *Gorton*).

However, Ms. Taylor argues that her out-of-class pay claim is not among the "classification matters" covered by the above citation. She argues that *Carr* and *Gorton* are distinguishable because they involved claims by employees that they were entitled to be in certain classifications, while her claim seeks payment for work she performed out of class. This argument advances a distinction without a difference. In either case the basic

issue is whether the designated classification of the employee correlates with the duties performed by the employee, and this court has held that the Executive Board, not the commission, is the proper body to make such a determination. *Wetzel*.

Ms. Taylor also cites the case of *Shapiro v. State Civil Service Commission*, 12 Pa. Commonwealth Ct. 121, 315 A.2d 324 (1974) in support of an argument that employees working out of class are "de facto" employees in the class corresponding to the duties that they are performing, and they are entitled to be paid accordingly. In fact, *Shapiro* does not stand for this proposition. Rather, *Shapiro* dealt with the situation where a *provisional* employee was kept on in a provisional status beyond the maximum period permitted by statute. This court held that although the continued employment beyond the statutory period was in contravention of law, the employee was a de facto employee who was entitled to be paid for services rendered. *Shapiro* concerned questions of status, not of classification, and hence it is not apposite to this case.

Therefore, we conclude that Commissioner Barnes' ruling at the hearing that the commission lacked jurisdiction to consider the claim advanced by Ms. Taylor here was correct, and we affirm the adjudication by the full commission that did not address the matter further.

### ORDER

NOW, January 25, 1988, the order of the Civil Service Commission at Appeal No. 5888, issued December 31, 1985, is affirmed.